## Case No. 11,609.

READ v. HULL OF A NEW BRIG.

[1 Story, 244.] [1]

Circuit Court, D. Maine. May Term, 1840.[2]

MARITIME LIENS—STATUTORY LIEN—GENERAL EMPLOYMENT.

1. Courts of admiralty have jurisdiction over such liens only as arise from work and labor connected with maritime affairs, navigation, or shipping.

[Cited in The Infanta, Case No. 7,030; Ludington v. The Nucleus, Id. 8,598; Hill v. The Golden Gate, Id. 6,491; The Maggie Hammond, 9 Wall. (76 U. S.) 450; The Edith, Case No. 4,283; The Ella, 48 Fed. 571.]

[2. Cited in Parmlee v. The Charles Mears, Case No. 10,766; Cunningham v. Hall, Id. 3,-481; The Richard Busteed, Id. 11,764; and Petrie v. The Coal Bluff No. 2, 3 Fed. 534,—to the point that contracts for the building of ships are maritime contracts.]

3. No lien attaches upon a domestic vessel for work and labor done and performed on her, except by statute.

[Cited in Macy v. De Wolf, Case No. 8,933; The Infanta, Id. 7,030; Nall v. The Illinois, Id. 10,005.]

4. The statute of Maine, of the 19th of February, 1839, giving effect to such a lien, in cases where work and labor are performed, or materials are furnished, in virtue of a "written or parol agreement," includes all parol agreements, whether expressed or implied; and any lien, however limited in point of duration of time, may be enforced by proceedings commenced within that period, in any proper tribunal having cognizance thereof.

[Cited in The Velocity, Case No. 16,911.]

5. Where the libellant was hired at monthly wages, upon a quantum meruit to perform any kind of work or labor in which the hirer might choose to employ him, under a general agreement and retainer, without any specific application thereof, fixed by the agreement, to any particular vessel or vessels, or to any other specific objects, it was held, that the statute was inapplicable to such a case, inasmuch as the agreement could not be apportioned according to the various services upon various vessels, or upon other objects.

[Cited in Purinton v. Hull of a New Ship, Case No. 11,473; The Barges 2 and 4, 58 Fed. 426.]

6. The statute was applicable only to cases of an agreement for work and labor to be performed upon a particular vessel, as a distinct and independent service, and not as a part of the general services of the libellant, which he was bound under his agreement and retainer to render in the common business and employment of the party, by whom he was hired, at the pleasure of the latter.

[Cited in Purinton v. Hull of a New Ship, Case No. 11,473; Sewall v. Same, Id. 12,-

---

[1] [Reported by Samuel H. Hempstead, Esq.]

[1] [Reported by William W. Story, Esq.]
[2] [Affirming Case No. 2,316.]

682: The Young Sam, Id. 18,186; The James H. Prentice, 36 Fed. 783.]

[Cited in Rogers v. Currier, 79 Mass. 133; Barstow v. Robinson, 84 Mass. 606.]

Libel in rem [by Richard Read] for work and labor as a blacksmith, done and performed at Portland, upon the hull of a new brig, of which one Purinton claimed to be owner, the balance due being $116.64. The district judge, at a trial in the district court, in March, 1840, dismissed the libel [Case No. 2,316]. and from this decree an appeal was taken to this court.

Fox & Codman, for libellant.

C. S. Daveis, for claimant.

STORY, Circuit Justice. This is the case of a libel in rem for the balance of an account of $116.64, asserted to be due to the libellant for work and labor done and performed at Portland, in this district, upon the hull of a new brig, while in building, by the libellant, as a blacksmith; the brig appearing by the evidence to be of the tonnage of two hundred tons and upwards. The brig was built by one David Spear at his shipyard in Portland, and is now claimed by John Purrinton, of Portland, as owner (either absolute or special) under a contract with Spear. The brig is admitted to be a domestic vessel, and is built and designed for maritime business and navigation upon the seas and waters navigable from the seas; so that her employment is clearly to be maritime, and the contract for the work and labor is for maritime purposes. This is a fact, which is naturally inferrible from the actual circumstances and local position of the port of Portland, and from the size and built of the vessel itself. It ought, however, to have been positively asserted in the libel, as it is, or at least may be, material to the exercise of the admiralty jurisdiction, both in rem and in personam, that the vessel is of a size and built fitted for maritime employment, and that her business is to be maritime navigation, or at least navigation upon waters, which are in some part thereof tide waters, or navigable to and from those waters. It is not every case, where a lien exists by the local law, or by the general law, that the admiralty possesses or exercises jurisdiction. The lien must arise from some business, employment. or work and labor connected with maritime affairs, or navigation, or shipping. The lien of an artisan for work or services performed in building a house, or a railroad car. or a railroad locomotive engine, or a wagon, under a contract, would not be such a lien, as could be enforced in the admiralty. However, I do not dwell upon this defect in the libel. as it has not been made matter of exception in the case; and, indeed, it might. if excepted to, be at once put right by an amendment.

This, then, being the case of a domestic vessel. no lien attaches for work and labor done and performed upon her hull, by the maritime law, at least, as recognized in England and America (a defect, which has been cured by a positive enactment at the last session of the parliament of Great Britain). The right to entertain jurisdiction in this court, depends upon the question, whether any lien is given by the local law of the state of Maine. If it is, then, according to the settled course of decisions in the courts of the United States, and especially as recognized in the case of Peyroux v. Howard, 7 Pet. [32 U. S.] 324, the district court, as a court of admiralty, has full jurisdiction thereof. By the statute of Maine of the 19th of February, 1834 (chapter 626), it is provided, "That all ship carpenters, caulkers, blacksmiths, joiners, and other persons, who shall perform labor or furnish materials for or on account of any vessel building or standing on the stocks, by virtue of a written or parol agreement, shall have a lien on such vessel for his or their wages, until four days after such vessel is launched." The present libel was filed before the expiration of the four days after the launching of this brig; so that if the lien exists at all, it is clear, that it had not ceased to exist, when this proceeding in rem was instituted. It is observable, that the language of the statute is, that the labor is performed "by virtue of a written or parol agreement." Now, upon the construction of these words, a doubt has been suggested, whether the language is applicable to any agreement, which is not express and positive in its terms; or in other words, whether it applies to any implied agreements, such as are those generally arising under a quantum meruit. It does not appear to me, that there is any solid ground for the doubt. If the agreement in the present case had been in writing, to pay the libellant for his work and labor as much as it was worth, not fixing any precise sum, it seems to me, that there would be no reasonable ground to doubt, that it would be a case within the statute; for it is a right, in such a case. directly flowing from a written contract. The same principle would apply to any express contract of the like nature. Why. then. should it not apply to an implied parol contract? What difference is there between a parol contract. by which the parties expressly declare their intentions and promises. and a parol contract implied by the law from their very acts and directions. Verbal declarations are not in many cases more forcible expressions of the understanding and intent of parties. than their acts. Indeed, it has been well said, that silence in some cases becomes even more expressive than words; and binds the party to obligations absolutely imperative, and which the possible ambiguity of words might, in some measure, vary or control. The statute speaks of parol agreements, not using any limitation or qualification; and therefore the words include by law all parol agreements; that is to say, all implied parol agreements, as well as all express parol agreements. Indeed. so purely formal is the distinction, that

in all common law pleadings, the terms of the declaration in assumpsit are precisely the same, whether the contract be express or implied; and evidence of an implied promise will support a count upon an express promise.

Another suggestion has been made; and that is, that the lien, being for a short and limited period, does not seem to furnish a just foundation for admiralty jurisdiction. But this objection seems unmaintainable. The right to maintain jurisdiction depends upon the fact, whether there is a lien at the time, when the suit is commenced, and not upon the length of time, for which it is to endure. Most maritime liens are limited in point of duration, not indeed by positive enactments, but by the general law and doctrine of courts of admiralty. The lien of bottomry, of seamen's wages, and of material-men, then, may be displaced by lapse of time, or gross laches in enforcing it. There is probably no lien, created by positive local law, in any one of our states, which is not limited in point of duration of time; and yet it may certainly be enforced by proceedings commenced within that period, in any proper tribunal having cognizance thereof.

The other point, raised by the evidence in the cause, is far more important, but, in my judgment, of no intrinsic difficulty. It is this, whether the statute applies to any other cases than those, where the written or parol agreement is for work and labor to be performed upon, or materials furnished for, a particular vessel; or, in other words, whether work and labor performed, or materials furnished upon a general retainer, without any specific application thereof, fixed by the contract to any particular vessel or vessels, or other object, is within the provision of the statute. I am satisfied, upon a careful examination of the evidence in this case, that the libellant was hired by Spear at monthly wages, upon a quantum meruit, to do any work and labor in which he might choose to employ him, although principally to be employed in blacksmith's work. He was not to be paid by particular daily wages for his work and labor done on this brig, nor could he be said, in any just sense, to have trusted to the brig as his security for payment of his wages. He was employed to do any blacksmith's work in which Spear might choose to employ him, not only upon vessels, but upon carts, and in shoeing cattle, and other ways. He was not to receive any distinct wages for work done upon this brig; but his work and labor on the brig was merely a portion of the ingredients, which entered into his earnings, to be allowed and paid for by monthly wages, quantum meruit. Now, it appears to me, that no case of this sort was or could be within the contemplation of the legislature of the state, in the present statute. It was manifestly, in my judgment, designed to apply solely to cases, where, whether the agreement was in writing or by parol, it was an agreement for work and labor to be done and performed upon a particular vessel, as a distinct and independent service, and not as a part of the general services of the party, mixed up and included in his retainer, and to be rendered in the common business or other employment of the person, who hired him, according to his own pleasure. How, in a case like the present, are we to apportion the value of the services of the libellant in the work and labor, done on this vessel? What part of the wages, due to him upon his general retainer, are to be borne by this vessel? If a person is hired to work at monthly wages, either fixed or upon a quantum meruit, how are we to apportion and subdivide the value of his work upon different things in the course of the month? The contract for the hiring is an entirety, and it is a personal obligation. Where is to be found the principle, which authorizes the court to apportion it upon the different things, on which the work is done, in the course of the month? The employer, in such a case, may have a lien for the work; for the other party is his servant. But it is difficult to perceive the ground, upon which the servant can entitle himself to any lien.

Besides; it is not, as has been remarked by the learned judge of the district court, the mere naked fact, that labor and services have been performed, or materials used upon a vessel, which entitles the party to a lien therefor. They must be done and furnished under a previous agreement. What agreement? Certainly an agreement, express or implied, relating to the particular vessel, on which the labor and services are to be performed, or for which the materials are to be furnished. The contract, then, must be, not a general contract or retainer for labor and services, but a specific contract or retainer for the particular vessel, embraced and referred to in the contract. There is no pretence to say, that in the present case, the libellant was to do work and labor upon a particular vessel, for which he was to receive a distinct and independent compensation, either fixed, or upon a quantum meruit. The work and labor on this vessel, and the compensation therefor, were merged in the more general contract and retainer in the common employment and general business of Spear.

In my judgment, the reasoning of the learned district judge on this point is entirely accurate and satisfactory; and the libel is not, upon the facts, sustainable; for there never was any distinct agreement for the work or labor on this vessel with the libellant, and consequently there never was any lien thereon under the statute of the state. The decree of the district court is therefore affirmed, with costs.