## PETRIE *v.* THE STEAM-TUG COAL BLUFF No. 2.

*(District Court, W. D. Pennsylvania.   June 18, 1880.)*

1. VESSEL—PART OWNER—WAGES—LIEN CREDITORS.—A part owner of a vessel condemned and sold in admiralty, who has a claim against the vessel for his wages as engineer, will not be permitted to assert his claim in opposition to creditors, who, by a state statute, have liens against the vessel for debts for which such owner is personably liable jointly with the other owners.

2. FUND IN REGISTRY—CLAIMANT.—Any person having an interest in a fund in the registry of a court of admiralty may apply by petition to have his claim satisfied out of the fund, although he may not be entitled to prosecute a suit in admiralty to enforce his claim.

3. MARITIME LIEN—STATUTORY LIEN.—A party to a suit in admiralty, whose lien is not a maritime one, but exists by virtue of a state statute, cannot object to a claim made a lien by the same statute, upon the ground that the latter grows out of a contract which is not maritime.

4. STATE STATUTE—MATERIAL MAN—LIEN.—Under the Pennsylvania statute of April 20, 1858, relating to vessels navigating the rivers Allegheny, Monongahela, and Ohio, a contractor who builds the hull of a steam-boat, and furnishes the materials therefor, has a lien.

In Admiralty.

Argued by *J. H. Barton, Jacob Miller* and *A. M. Watson,* representing various interests.

ACHESON, D. J.    James Petrie filed in this court his libel against the steam-tug Coal Bluff No. 2, a vessel belonging to the port of Pittsburgh, and engaged in navigating the rivers Allegheny, Monongahela, and Ohio.    Process having issued against the boat, she was seized, and was subsequently condemned, and was sold by the marshal, who paid into the registry of the court the proceeds of sale.

All claims for wages, (except that of John N. McCurdy,) and all other maritime liens against the vessel, have been paid out of the proceeds of the sale.    There still remains in the registry of the court, for distribution, the sum of $3,127.82.

The claimants upon this fund are—*First,* John N. McCurdy, who filed an intervening libel for his wages as engineer; and, *second,* domestic creditors of the boat, claiming liens under the Pennsylvania statute of April 20, 1858, (1 Purdon, 97,) which applies to "all ships, steam-boats, or vessels navigating the rivers Allegheny, Monongahela, and Ohio," in said state. This act gives a lien "for all debts contracted" by the owner or owners, master, etc., of any such ship, steam-boat, or vessel, "for or on account of work and labor done, or materials furnished, by boat builders, engine builders, boiler makers, lumbermen, boat-store and provision furnishers, carpenters," etc., "in the building, repairing, fitting, furnishing, or equipping such ships, steam or other boat or vessels."

1. John N. McCurdy was the engineer of the boat, and there was due him at the time of the seizure, on account of his wages, the sum of $1,700.    But he was also one of the owners of the boat.    Whether or not he could maintain a libel against his own boat for a debt due, in part at least, from himself to himself, or, as between himself and co-owners, might claim a lien against the vessel or her proceeds, are questions which it is not necessary to consider;   for the fund for distribution is insufficient to pay the creditors of the boat whose claims were liens by virtue of the Pennsylvania statute.  Now, for the payment of these claims, McCurdy himself is person-

ally liable, jointly with the other owners.    Can he then successfully contest the right of his own creditors to this fund? Are they to be deprived by him of the security which the statute gives them?    To ask these questions is to answer them negatively.    A court of admiralty, while not a court of general equity, yet acts upon equitable principles; and surely it would be against all equity to divert from the creditors this fund and place it into the hands of the debtor, who possibly may be insolvent.    The commissioner, whose report is now before the court upon exceptions, was quite right in disallowing this claim.

2. The creditors of the boat claiming the fund are of two classes, viz.: *First*, those whose claims are for work done and materials furnished in the *building* of the Coal Bluff No. 2; and *second*, those whose claims are for *supplies* furnished the boat, or for *repairs* made to her.    In the case of the former class of creditors, the commissioner made a distinction between claims for materials furnished for the hull of the boat and work thereon done before it was launched, and for materials furnished and work done after the hull was afloat.    The latter he allowed, but the former he disallowed upon the ground that the contracts therefor were made and performed on land.    I cannot recognize this distinction as existing in the statute, or as having any foundation in reason.    The fact is, even repairs are frequently made to a vessel when she is on land—hauled ashore for the purpose—of which we have an instance in the case of *The Planter*, 7 Peters, 324, where a libel *in rem*, in admiralty, was sustained for repairs to the vessel at her home port, where the local law gave a lien.

Originally, the claimants for materials furnished and work done in the building of the Coal Bluff No. 2 filed intervening libels against the boat; and thus the case stood when it was before the commissioner.    But since the coming in of his report these creditors, by leave of court, have filed petitions, under the forty-third admiralty rule, to be let in upon the proceeds of the vessel in the registry of the court, in accordance with the practice recognized in *Schuchardt* v. *Babbidge*,

19 How. 239, and *The Lottawanna*, 21 Wall. 558, 582,—a practice which permits any party having an interest in such fund to apply by petition to have his claim satisfied out of the same, and this although the petitioner cannot prosecute a suit in admiralty. In view, then, of the changed condition of the case, it becomes unnecessary to consider the question raised in the commissioner's report, and by exceptions thereto, and discussed by counsel, whether state statutes may create liens for debts incurred in *building*, and furnishing materials for *building*, vessels, which will be enforceable in admiralty, as is affirmed by Mr. Conckling, (volume 1, page 104,) by Mr. Benedict, (section 270,) and by Mr. Desty in his late manual on Shipping and Admiralty, (section 90,) and as was ruled affirmatively by Judge Story, in *Read* v. *New Brig*, 1 Story, 244, and by Judge Hopkinson in *Davis* v. *New Brig*, Gilpin, 473.

None of these domestic creditors have maritime liens. It is only by virtue of the Pennsylvania statute that any of them have liens; and the statute makes no distinction between debts contracted in the building of a vessel, and debts for *supplies* or *repairs* to her. They are all equally made liens. It is plain, therefore, that a party who must resort to this statute to maintain a footing at all in this court cannot successfully call in question the right of another claimant, and clearly conferred by the same statute. Whoever else may be heard to assert that a contract for building a vessel is not a maritime contract, or in the nature thereof, it is certain that *he* cannot, upon that ground, defeat the builder's lien given by the statute. But it has been further urged, against the claim of McCaskey & Kerr, who built the hull of the Coal Bluff No. 2, and furnished the materials therefor, that they were *contractors* to build the hull, and, upon the authority of *Walker* v. *Anshutz*, 6 Watts & Ser. 519, not entitled to a lien. But that case arose under the Pennsylvania act of 1836, which is less broad than the act of 1858. The latter act was construed by the supreme court of the state in the case of *The Dictator*, 56 Pa. St. 290, in which it was held

that, under a contract to build the cabin or the hull of a steamboat, and furnish the materials, the contractor has a lien by the act of 1858. The written contract in that case and the one here are substantially the same in all essential particulars, except that the former related to the cabin of the boat, and the latter to the hull. I regard the case of *The Dictator* as authoritatively deciding that under such a contract as that of McCaskey & Kerr the contractors have a lien by the act of April 20, 1858. This is my own opinion upon the statute, independent of the above-quoted decision.

The exceptions to the commissioner's report filed by McCaskey & Kerr and William Miller must be sustained, and those filed by John N. McCurdy and J. & E. Ackley overruled.

Let a decree be drawn in accordance with the views expressed in this opinion.