THE SHORT CUT.

*(District Court, W. D. Pennsylvania.    March 17, 1881.)*

1. "CLERK"—PENN. ACT OF APRIL 20, 1858.
    The "secretary and superintendent" of a corporation, who "had charge of the fitting and building" of a boat for such corporation, is not a "clerk" within the meaning of the Pennsylvania act of April 20, 1858, (1 Purd. 97,) relating to boats navigating the rivers Allegheny, Monongahela, and Ohio.

2. MASTER OF VESSEL—LIEN FOR WAGES.
    The master of a vessel has no lien in admiralty for his wages.

3. SAME—STATUTORY LIEN—INTERVENTION.
    Such master cannot by intervention avail himself of the original libel, in order to obtain the benefit of a statutory lien which has expired by limitation

4. SAME—FAILURE TO PAY FOR STOCK—DEBTS OF THE VESSEL.
    The failure of such master to pay for his stock in the corporation owning the vessel will defeat his claim for wages in advance of the payment of the debts of the vessel.—[ED.

In Admiralty.

*Sur* Exceptions to the Commissioner's Report Distributing Proceeds of Sale.

*William M. McElroy,* for exceptions.

*John S. Lambie,* for report.

ACHESON, D. J.    The exceptant, R. H. Palmer, Jr., claims to be paid, out of the proceeds of the sale of the steam-ferry-boat Short Cut, $288, "for his services as clerk," from March 2 to June 23, 1880, and $204.88, the balance of his wages as master, from June 23 to October 6, 1880.

The evidence, however, shows that the exceptant was not a clerk of the boat in any proper sense of that term.    During the period covered by that part of his claim the boat was in course of construction.    She was built for and owned by the Six-Mile Ferry Company, a corporation.    The hull was built under contract by S. P. & I. N. Large for this company, and the company had the boat finished.    The exceptant was "secretary and superintendent" of the corporation, appointed by the board of directors.    He testifies that he "had charge of the building and fitting of the boat," or, as he elsewhere

expresses it, was "superintendent of the construction of the boat." It is clear that he was not a "clerk" within the meaning of the Pennsylvania act of April 20, 1858, relating to boats navigating the rivers Allegheny, Monongahela, and Ohio. 1 Purd. 97. Indeed, I do not understand that it is contended that he had a lien for the $288 by virtue of that statute. He claims that he had a maritime lien against the boat. But the Short Cut was a domestic vessel, and the exceptant's services were rendered at home. If, then, his services as superintendent were of a maritime nature, (which I do not think,) he had no lien therefor. *The Lottawanna,* 21 Wall. 558.

It is well settled that a master of a vessel has no lien against her for his wages. *Steam-boat Orleans* v. *Phœbus,* 11 Pet. 175; 1 Conck. Adm. 115. The exceptant, therefore, to sustain a lien for his wages as master of the Short Cut, must rely wholly upon the Pennsylvania act above cited. But the third section of that act prescribes that such lien claimant shall commence his suit within 60 days after his wages shall have become due and owing; and the fourth section provides that any neglect or failure so to commence suit shall discharge the boat from the lien. Now the exceptant quit the Short Cut October 6, 1880; and his wages, it would seem, were then due and owing. He did not, however, commence his suit within 60 days, nor until December 14, 1880, when he filed his intervening libel in this case. But I am of opinion that his lien was then gone, notwithstanding the original libel of D. K. Calhoun in this case was filed November 15, 1880. I do not see upon what principle the exceptant can avail himself of the original libel to avoid the consequence of his delay in suing. He was not a party to the original libel, and it was not filed or prosecuted for his benefit. At any time before his intervention the proceedings might have been discontinued without his consent. As the lien was wholly statutory, it must be governed, as respects its duration, by the limitation imposed by the statute.

But if the objection just discussed could be overcome, there is an equitable ground for disallowing the exceptant's claim

632      FEDERAL REPORTER.

for his wages as master. The debts of the boat (exclusive of his claims) far exceed the fund for distribution. They were contracted in the building, equipping, and running of the boat, and are liens under the local law. For the most part they were incurred upon the orders of the exceptant as superintendent and master. The exceptant is an original stockholder of the Six-Mile Ferry Company, holding stock to the amount of $300 at the par value. But no part of his stock has been paid up. He testifies, indeed, that there was an understanding between himself and the company that he was to pay nothing, as he "was poor and had no money to pay for it." He adds, however, that it was his calculation to pay for his stock out of his share of the profits. Now, the capital stock of a corporation is a fund for the payment of its debts, (*Sanger* v. *Upton*, 91 U. S. 56,) and the corporation cannot grant to an original stockholder an immunity from liability to stock payments to the prejudice of the creditors of the corporation. *Upton* v. *Tribilcock*, 91 U. S. 45. If, then, there was an agreement, such as alleged, that the exceptant was not to pay for his stock, it was fraudulent in law, and void as against the creditors whom the exceptant is now opposing; and if he is too poor to pay his share of the capital stock he should not be permitted to diminish the scanty fund now for distribution, for, so far as appears, the corporation has no other property.