## THE DAISY DAY.

### (District Court, W. D. Michigan, S. D. February 26, 1889.)

1. MARITIME LIENS—PRIORITY—WAGES.
   Maritime liens for seamen's wages are superior to a lien for damages from negligent towage, where it does not appear that the seamen contributed to such negligence.

2. SAME—DAMAGES.
   A lien for damages from negligent towage has priority over a lien for supplies and repairs.

3. SAME—SUPPLIES.
   The lien for supplies furnished to a vessel in a home port, given by How. St. Mich. § 8236, stands on the same footing as maritime liens for supplies and repairs furnished in foreign ports.

4. SAME—INSURANCE PREMIUMS.
   A lien for unpaid premiums on insurance on a vessel, whether maritime or statutory, is subordinate to liens for supplies and repairs.

In Admiralty. On application for distribution of proceeds.

*M. C. & A. A. Krause*, for Gunderson.

*Peter Doran*, for intervening libelants for supplies and repairs.

*Fletcher & Wanty*, for Marine Insurance Co.

SEVERENS, J. On the 17th day of September, 1888, Charles G. Alley and others, composing the firm of C. G. Alley & Co., filed their libel in this court against the propeller Daisy Day, for the purpose of enforcing an alleged lien for supplies furnished the vessel during the season of navigation for that year. The owners having made default, a decree was entered pursuant to the claim of the libelants on the 21st day of November following, and the vessel ordered sold. Meantime a number of additional libels had been filed, some for sailors' wages, some for supplies, some for material and repairs, some for repairs, and one (that of G. F. Gunderson) for damages arising from the negligent towage by the propeller of the schooner G. Barber, belonging to that libelant. The vessel was sold under the decree upon the original libel, and the proceeds brought into the registry of the court. Supplemental decrees

have since been passed, establishing the claims of the other libelants, in whole or in part, and upon the intervention of the Marine Insurance Company an order has been made admitting its claim for an unpaid premium for an insurance effected by the owners upon the vessel in May, 1888. Hitherto the proceedings in the case have run on under the direction of the proctors for the parties interested, without seriously attracting the attention of the court. But it now appearing that the several sums allowed for seamen's wages, damages for negligence, insurance, supplies, materials, and repairs, together with the costs of the suit, amount to more than the proceeds of the vessel, it becomes necessary to determine the rank in which the several claims are entitled to stand in the order for distribution. And here serious questions arise; for the decisions on almost every one of them are in conflict, and the only resource left to the court is to follow such adjudications as should have here the force of authority, and, where such adjudications are wanting, to follow the lights which seem fed with the better reasons.

1. And first, with regard to the seamen's wages. The Gunderson claim for damages in tort contests with that class the priority of lien. It is not contended that any other claims could do this. Notwithstanding what is said in *Norwich Co.* v. *Wright*, 13 Wall., at page 122, namely, "Liens for reparation for wrong done are superior to any prior liens for money borrowed, wages, pilotage, etc., but they stand on an equality with regard to each other, if they arise from the same cause," I am satisfied that the rule in the admiralty law of this country is to prefer the claims of seamen for wages to claims for such torts as negligence in towage, provided the seaman whose claim is in question was free from fault. It would most generally happen that the subordination of common seamen in the marine service would render them guiltless in such occasions as collisions, and accidents from negligent towage; but if it appeared (as it does not here) that the seaman was in fact in fault, his claim should be postponed to the damages to which he had contributed. If I were satisfied that this question was present to the mind of the supreme court in *Norwich Co.* v. *Wright*, and intended to be adjudged, I should, of course, unhesitatingly follow what was there held; but I do not understand that it was so presented and adjudged. The line of reasoning in which the court was employed did not involve it. The lien for seamen's wages is a highly favored one, and, with the proviso above stated, I am of opinion that the rule declared and acted upon in *The Orient*, 10 Ben. 620, and *The Samuel J. Christian*, 16 Fed. Rep. 796, that this claim should be preferred to claims against the offending vessel for torts of such a character as the one in question, is correct.

2. The next question arises upon the relative rank of the claim for damages, as compared with the claims for supplies and repairs and insurance. And here I feel compelled to adopt the rule affirmed by Judge Nixon in the case of *The M. Vandercook*, 24 Fed. Rep. 478, and which I think the supreme court by necessary implication did adopt and hold in *Norwich Co.* v. *Wright*, *supra*, namely, that such claims in damages outrank the claims arising *ex contractu*, above enumerated. It is

true the district judges in the eastern and southern districts of New York held otherwise in *The Samuel J. Christian*, 16 Fed. Rep. 796; *The Grapeshot*, 22 Fed. Rep. 123; and *The Young America*, 30 Fed. Rep. 789; and freedom of action, as against the case of *Norwich Co.* v. *Wright*, is sought to be vindicated by the suggestion that in the quotation made from Maclachlan (and heretofore quoted) Mr. Justice BRADLEY was thinking only of the ranking together of claims arising from the same cause, and I have no doubt this was so. But it cannot be doubted that the supreme court did adjudge in that case that the claim for the loss of the cargo laden upon the offending vessel under a contract of affreightment was entitled to the same rank and to share equally with the claims for the injury to the wronged vessel and its cargo. It was necessary for the court to decide that question, because the damages of the libelants did not extend to the amount at which the liability of the ship-owner was limited by the act of congress, and unless the value of the cargo upon the libeled vessel would share with the claim of the libelants (which was for the value of the lost vessel and its cargo) no further question was in the case. But the court, having held as above stated, proceeded to adjudge the other questions upon that footing. And it seems to me that that adjudication destroys the validity of the reasoning pursued in the New York cases above cited. Their argument is that, conceding the damages resulting from collision are entitled to priority over claims for supplies and the like, arising *ex contractu*, still the damages resulting from fault in towage arise substantially from a breach of contract, and are suffered by one who has voluntarily come into contract relations with the towing vessel, as distinguished from one who has exercised no freedom of action, as in a case of collision. And the inference drawn is that the damages, being thus essentially for breach of contract, must rank with ordinary claims arising upon contract, and fall under those arising out of tort, as in collision. But every incident thus assumed as the basis for the difference of rank in claims for collision and negligent towage exists in the case of the claim for damages to the cargo on board the offending ship in collision. Surely there would seem to be no solid ground for distinguishing in this particular between claims arising out of a contract of affreightment and those arising out of a contract for towage. Besides, the question whether a claim is one in contract or for tort is by no means a sure test of priority, as the course pursued in one of those cases of giving priority for seamen's wages shows. But, aside from all that, the reasoning adopted by those courts to show that a claim arising from negligent towage is in its nature and analogies *ex contractu* is not, I must say, with great deference, satisfactory to me, and it seems that the view taken by Judge NIXON in *The M. Vandercook* is the correct one, (and see, also, *The Liberty No. 4*, 7 Fed. Rep. 226;) for, although the parties are in contract relations, they contemplate the opposite of negligence. By the contract the towing vessel undertakes the duty of vigilance and skill. It is quite similar in its general features to that implied in the contract for carriage, though it may not be in all respects the same. Is the duty which binds to skill and watchfulness

any the less because the contract relation exists? The law imputes the duty in either case, whether to a vessel proceeding on her course among strangers, or to one who has by stipulation undertaken an obligation wherein the law implies that duty as specifically and distinctly due to one. An action in tort would lie for a violation of that duty, (*The Quickstep*, 9 Wall. 665, 670,) and I know of no rule of law or anything in reason which should lead to any distinction in the character of the duty or in the merits of the claim for damages in the two cases. It was also said in *The Samuel J. Christian*, 16 Fed. Rep. 796, 798, as a reason for postponing such damages to those for supplies, that the contract of towage has no relation to any necessity of the tug, in no way tends to increase the value of the tug, or to preserve her, or to enable her to earn freight; and that it is one of the necessities of commerce that a ship needing repairs and supplies should be forthwith relieved. This is true, undoubtedly, but it is also essential to commerce that the ship when equipped should find employment. Giving it legs and wings to speed on its way is profitless, if it goes empty. The ultimate object of the system of maritime liens was the encouragement and increase of commerce. It is therefore held that the claim for damages will have priority over those for supplies and repairs.

3. The third question arises in regard to the different claims for supplies, material, and repairs, upon the circumstance that some of them were furnished at the home port of the vessel, and within the state, while others were furnished abroad. The statute of Michigan (How. St. § 8236) gives a lien for such furnishing at the home port. But it was held by WITHEY, J., in *The St. Joseph*, Brown, Adm. 202, that liens for supplies and repairs furnished in foreign ports, which are strictly maritime liens, should have priority over liens under state laws. That rule has been followed in this district ever since by acquiescence and without question. Its correctness is challenged now. The question also arose in the eastern district, in the case of *The General Burnside*, 3 Fed. Rep. 228, and was decided by Judge BROWN in the same way; but on appeal to the circuit court this decision was reversed by BAXTER, J., who held, for reasons which were then stated, that claims for which the state law gives a lien should have equal rank with claims for which a lien is given by the maritime law, and should share with them *pro rata* in case of deficiency. This rule was followed by the district judge in the southern district of Ohio in *The Guiding Star*, 9 Fed. Rep. 521, and on appeal the decree below was affirmed by Mr. Justice MATTHEWS in the same case, (18 Fed. Rep. 263,) the circuit judge being also present and concurring. I feel bound to follow this ruling, without entering upon any discussion of it. The effect of the latter cases is to overrule *The St. Joseph*, *supra*. The supplies, etc., in the home port, will therefore stand on the same footing with the foreign claims in respect to those items.

4. The remaining question is in regard to the location on the schedule of the claim for insurance. It was held in *The Dolphin*, 1 Flip. 580, that the maritime law gives a lien for such claims, but that they were of low rank, and should go to the foot of the schedule. In *The Guiding*

*Star* it was held that there was no maritime lien, but as the statute of Ohio gave a lien, and the contract itself had been held to be maritime in its nature by the supreme court in *Insurance Co.* v. *Dunham*, 11 Wall. 1, the court of admiralty would enforce it, and in that case it was directed to be put with the claims for foreign and domestic supplies, and to share with them in the proceeds. It is not clear to my mind that the relative rank of this claim was considered by the court in the case of *The Guiding Star*. If it were clear that it was considered, I should, of course, follow it; but the case of *The Dolphin* had been decided, and the volume of Reports containing it published several years before. That decision, which contained a full discussion of the subject, was not referred to, nor was any other authority referred to, and the matter was not discussed. The fact that the statutes in that state and in this give a lien for this claim does not at all determine its relative merit, nor confound the principles which prevail in admiralty. If it did it would put such a claim on a footing with seamen's wages and other favored claims. This court will not admit the statute of a state to accomplish such results in its procedure. The claim for insurance, though admitted, must stand on its own merits; and considering that the contract is one simply of indemnity to the owner, in no way helps the ship, and is collateral to its employment, I shall, with a little misgiving of my right to this opinion, in view of what was done in the case of *The Guiding Star*, hold that this claim should be subordinated to the claims for supplies and the like, and given the next place. In holding this, no stress is laid upon the question whether the lien is maritime or statutory, consideration being given solely to its merits as a lien upon the ship; having in mind the principle and purpose for which the court as a court of admiralty must regard such liens as attaching. It has been the practice in this district in such cases to adjust the costs, so that the costs on the original claim should be paid first, and after that so that those incurred in respect of each class of claims should precede in payment the class to which such claims respectively belong, and so on down through the list. That practice will be followed in the present case. An order for distribution will be entered in accordance with the foregoing opinion.