<hr />

### THE LENA MOWBRAY.

### McDOWELL v. THE LENA MOWBRAY.

(District Court, S. D. Alabama. December 24, 1895.)

1. MARITIME LIENS—WAGES OF MASTER AND PART OWNER — STATE STATUTES.
   A state statute giving a lien for master's wages (Code Ala. § 3054) will not be enforced by a federal court in favor of a master who is also a part owner, or where the services were not rendered upon the credit of the vessel.[1]

<hr />

[1] See Thompson v. The J. D. Morton, 2 Ohio St. 31, 32; The Daniel Kaine, 35 Fed. 785, and numerous citations; Patton v. The Randolph, Gilp. 457, 458, Fed. Cas. No. 10,837; The Edith, 94 U. S. 518; Abb. Shipp. (13th Ed.) 870; 1 W. Rob. Adm. 399; The Brothers, 7 Fed. 878; Kellum v. Emerson, Fed. Cas. No. 7,669.

**2. SAME—PRESUMPTIONS.**
> The presumption is that the master trusts to the personal credit of the owner for his wages. The Atlas, 42 Fed. 793, followed.

This was a libel by John W. McDowell against the tug Lena Mowbray to enforce a claim for master's wages.

G. L. Smith and W. D. McKinstry, for libelant.

Pillans, Torrey & Hanaw, for claimant.

TOULMIN, District Judge. This is a libel for wages as master. The services for which wages are claimed were rendered in the home port of the tug. The libelant was a part owner of the tug, and operated her on the joint account of himself and one W. G. Catrell, the other owner. Under an agreement with his co-owner libelant was to receive $80 a month as master and pilot. He served some five or six months, operated and managed the tug, purchased most of the supplies, made the disbursements out of the earnings, and kept the accounts of the vessel. Out of the earnings he paid himself $189 on account of his wages as master, and he now sues the vessel in rem for a balance of wages alleged to be due him.

The controlling question presented for the court to decide is whether a part owner of a vessel can maintain a suit in rem against her for wages as master. I think it is clear that a part owner has no maritime lien on his own vessel for advances or disbursements made by him on her account or for services rendered to her as master or otherwise. White v. Proceeds of The Americus, 19 Fed. 848; The Wyoming, 36 Fed. 493; Kellum v. Emerson, Fed. Cas. No. 7,669; The Larch, Id. 8,085. The contract under which the libelant performed the services was one to which he, as part owner of the tug, was a party, and upon which he is, himself, personally liable. In the case of Thompson v. The J. D. Morton, 59 Am. Dec. 662, which was a proceeding under a statute giving a lien against water craft, the court said:

> "The craft itself is endowed with no capacity to become a party to a contract. The law simply authorizes the craft to be made liable upon seizure by a proceeding in rem. It is true the craft is named as the defendant in the proceeding, but this does not constitute it an artificial person with capacity to contract. This proceeding, therefore, is only an accumulative remedy, given by the statute, for the recovery of a claim against the owner himself. To authorize the owner of a boat or vessel to institute a suit upon his own liability and against his own property would be, to say the least of it, a gross absurdity."

By the maritime law the master has no lien on the ship for his wages. But the state statute gives him a lien. The language of the statute is:

> "A lien is hereby created on any ship, steamboat or other craft * * * for the wages of the masters * * * of such ship, steamboat or water craft in preference to other liens thereon, for debts contracted by or owing from the owners thereof." Code Ala. § 3054.

This language clearly implies that the wages of a master of a ship constitute a debt contracted by or owing from the owners thereof for the security of which a lien is given on the ship. The object of the

maritime law is to provide a convenient and efficient remedy by subjecting the liability of the vessel itself, and thus avoid the difficulty which sometimes exists of ascertaining and proceeding against the owner or owners in person; and the object of the state statute is to put that local lien on a par with the general maritime lien, that the creditors of the domestic vessel in her home port may be put on the same footing with creditors of a foreign vessel and with creditors of the particular vessel in a foreign port. The Daisy Day, 40 Fed. 538.

That the person having the demand has the option to proceed against the owner or the ship itself in any court of competent jurisdiction, I presume, will not be questioned. But there are qualifications pertaining to maritime liens in general which would limit the jurisdiction of the admiralty court in enforcing the lien given by the state statute. It is because the contract for the services is maritime that the admiralty court has and exercises any jurisdiction in the matter, and that court construes and enforces the lien given by the state statute in harmony with the general principles of the maritime law. The local statute cannot enlarge the jurisdiction or scope of the general admiralty law. The Samuel Marshall, 49 Fed. 754; Id., 4 C. C. A. 385, 54 Fed. 396.

Under the general maritime law the part owner is not entitled to a lien on his own ship, and I think it follows that he has no such right of lien under the state statute.

There is a question of fact involved in this case which, it seems to me, must carry the decree against the libelant irrespective of the principles of law to which I have already adverted, and that is that it does not appear from the proof that the libelant's services were rendered on the credit of the vessel. A maritime lien against a vessel for services created by a state statute will not be enforced by the United States courts unless the services were rendered on the credit of the vessel. The Samuel Marshall, 4 C. C. A. 385, 54 Fed. 396; S. H. Harmon Lumber Co. v. Lighters Nos. 27 and 28, 6 C. C. A. 493, 57 Fed. 664. One seeking to enforce against a vessel such lien must establish by proof that credit was given to the vessel and not to the owner. The Samuel Marshall, 49 Fed. 754. The presumption is that a master trusts to the personal credit of the owner. The Atlas, 42 Fed. 793. The only proof on the subject in this case tends to show that the libelant looked to the earnings of the tug for his compensation. It shows that he paid himself, out of the earnings of the tug, all the money he ever received on account of his wages. Irrespective, then, of the principle of maritime law that a part owner has no lien on his ship for compensation for his services to her, the libelant is not entitled to recover, because of his failure to establish by proof that credit was given to the vessel. My opinion is that whatever claim he may have on the ground alleged must form one of the items of an account to be taken of the earnings and expenses of the tug, and which cannot be taken in this court for want of jurisdiction. The libel must, therefore, be dismissed, and it is so ordered.