### THE M. M. MORRILL.

### WHITE v. THE M. M. MORRILL.

(District Court, D. Washington, N. D. February 5, 1897.)

1. SEAMEN—ASSIGNMENT OF WAGES—PART OWNERS.

Persons employed as hunters for a sealing voyage, by the master, from whom they had purchased interests in the vessel, agreeing that half their wages might be applied to the purchase price, *held* to be within the protection of Rev. St. § 4536, forbidding the assignment of mariners' wages.

2. SAME—LIEN.

Persons employed as seal hunters, after purchasing interests in the vessel from the master, and giving mortgages thereon for unpaid balances, may, as against the master and other part owners, maintain a suit in rem for their wages.

This was a libel in rem to recover seamen's wages.

G. M. Emory, for libelant and interveners.

James Kiefer, for respondents.

HANFORD, District Judge. In this case the libelant, Charles H. White, and the intervener, S. N. Johnson, are suing to recover money earned by and due to them for their services as hunters on a sealing voyage in the North Pacific Ocean. The case is defended by A. S. Nelson, one of the owners of the vessel, and by Edward Cantillion, who was master of the vessel on the voyage. Cantillion was owner of one-third of the vessel, and he sold his interest to said libelant and intervener, conveying one-sixth to each, for which he received from Johnson $350 and a promissory note for $350, and from White a promissory note for $700; and, to secure payment of said notes, he received mortgages upon the interests of each in the vessel. He also held mortgages from the other owners upon all of their interests. He then entered into a contract with the owners, by which he undertook to furnish supplies for the voy-

age, and to go as master, for which he was to be paid a stipulated sum for wages, and also to have a certain amount for each seal skin secured, and one-fourth of the proceeds from all seals which he should kill; and he was to be repaid for his advances for supplying the vessel, with interest. He then hired the libelant and said intervener to go on said voyage as hunters, agreeing to pay them for their services one-fourth of the proceeds of all seal skins which they should secure. He also made a special contract with them, by which one-half of their earnings on the voyage should be applied to pay their indebtedness to him upon said promissory notes. The voyage proved to be unprofitable. Cantillion sold the seal skins secured, and from the proceeds thereof has paid himself his wages in full, and his compensation at the agreed rate for all seals which he individually killed; and after deducting such disbursements, and applying the remainder on account of advances which he made for supplies, there remains due to him a balance of $943.08, and the individual indebtedness of the several owners, secured by mortgages on the vessel, remain wholly unpaid. The libelant acknowledges to have received on account of his wages the sum of $113.02, and there remains unpaid $259. Johnson received on account of his earnings $118, and there remains unpaid $209. These balances Cantillion has taken out of the proceeds from the sale of the seal skins which came into his hands, and claims the right to retain the whole thereof, on account of the indebtedness to him for supplies furnished, and the promissory notes above mentioned.

Section 4536 of the Revised Statutes of the United States makes any contract or agreement in the nature of an assignment of mariners' wages invalid. I hold that these men are mariners, and that their wages are protected by this section,—as much so as if they had shipped for a whaling voyage, or in any other capacity, in the services of a vessel engaged in commerce.

Cantillion and Nelson dispute the right of these men to maintain this suit in rem on the ground that, being part owners of the vessel, they are not entitled to a lien; and in behalf of Cantillion it is especially urged that it is contrary to equity for these men to impair the security which they have given by mortgages upon their interests in the vessel, by enforcing a lien for wages. The rule forbidding an owner of a vessel to claim a lien, to the prejudice of others extending credit to the vessel, is well established by the authorities. Patton v. The Randolph, Fed. Cas. No. 10,837; Petrie v. Steamtug, 3 Fed. 531; The Short Cut, 6 Fed. 630; The Queen of St. Johns, 31 Fed. 24; The Lena Mowbray, 71 Fed. 720. But in this case there are no innocent creditors or purchasers to be prejudiced by the discovery of a secret lien, and I hold that the peculiar facts of this case make the rule inapplicable. When it is said that these men have given the vessel as security for their debts, the argument cuts backward, for it is equally true that Cantillion, by virtue of his authority as master of the vessel, gave the vessel as security for the wages of those whom he employed in her

service, and he also became personally liable to them; and it may well be argued that it is contrary to the principles of equity for him to now impair the value of the security for mariners' wages by enforcing his rights as mortgagee, unless the wages be first paid.

With the acquiescence of all parties interested, the vessel has been sold by the marshal, and Cantillion became the purchaser, for the sum of $1,800; and he is now claiming the proceeds of the sale, after payment of costs, to apply on the indebtedness of the several owners to him; so that, if he should prevail in defeating the libelant and the intervener from recovering their wages, the result of the adventure may be summed up as follows: Cantillion will have the $350 paid by Johnson, and for the balance, of less than $1,000 on account of supplies and the marshal's costs upon the sale of the vessel, will have absorbed the entire earnings of the vessel and her crew, and acquired the vessel itself, and still hold the libelant and the intervener indebted to him for a considerable part of the promissory notes given for the purchase price of their interests in the vessel. All this by his cleverness in persuading these men to purchase his interest in the vessel before hiring them. I consider that the justice of the case requires that these men should receive their wages from the money in the registry, and it will be so decreed.

Against the claim of John Johnson, intervener herein, for supplies furnished, on the credit of the vessel, under contract with Nelson, as managing owner, there seems to be no defense. The decree will also award payment to him of the amount sued for.