<hr />

## NELSON et al. v. WHITE et al.

(Circuit Court of Appeals, Ninth Circuit. October 4, 1897.)

### No. 364.

ADMIRALTY APPEALS—HEARING IN CIRCUIT COURT OF APPEALS.

The act of February 16, 1875, requiring the circuit courts, in admiralty cases, to make separate findings of fact and conclusions of law, and limiting the supreme court, on appeal, to a review of the questions of law arising on the record, etc., is not applicable to the trial of admiralty cases in the district courts, and the review thereof on appeal by the circuit courts of appeal; but in the latter courts an admiralty appeal is, to all intents and purposes, a trial de novo, so that the appeal cannot be heard upon the merits, where the transcript of the record does not contain the testimony taken below, as required by general admiralty rule 52 and by the rules of the circuit court of appeals.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Washington.

James Kiefer and H. K. Struve, for appellants.

G. M. Emory (Bausman, Kelleher & Emory, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The first question to be considered upon this appeal is the motion of the appellees to dismiss the appeal. This motion is predicated upon the fact that the transcript of the record does not contain the testimony taken in the court below. This is an admiralty suit, instituted in the district court of the United States for the district of Washington, Northern division, by Charles H. White, one of the appellees, against the schooner M. M. Morrill, to recover the sum of $259, being a balance alleged to be due for services rendered the vessel, upon a sealing voyage in the North Pacific Ocean, in the capacity of a hunter, at the special instance of Edward Cantillion, her master, and one of the appellants on this appeal. Subsequently S. N. Johnson, the other appellee, filed a libel in intervention against the schooner, also to recover a balance claimed to be due for services rendered at the special instance of Edward Cantillion, the master, in the capacity of a hunter, upon the sealing voyage in the North Pacific Ocean. The vessel was claimed by A. S. Nelson, the managing owner, one of the appellants. Edward Cantillion, the master, intervened in his own behalf to recover certain sums claimed to be due him as wages, and for money advanced to fit out the vessel for the voyage in question, and also for the payment of certain notes secured by mortgages on the vessel of the interests of the owners. During the pendency of the suit the vessel was sold, bringing the sum of $1,800, and it is against the balance of proceeds of the sale that the claims of the libelant and the interveners for preference are directed. The court below preferred the claims for wages of the libelant, C. H. White, and of the intervener, S. N. Johnson, as against that of Edward Cantillion, the master and mortgagee of the vessel. From this decision the claimant and managing owner, A. S. Nelson, and Edward Cantillion have appealed.

Rule 14, subd. 3, of the rules of the United States circuit court of appeals for this circuit (Ninth), provides:

"No case will be heard until a complete record, containing in itself, and not by reference, all the papers, exhibits, depositions and other proceedings which are necessary to the hearing in this court, shall be filed." 21 C. C. A. ciii., 78 Fed. ciii.

Subdivision 6 of the same rule provides:

"The record in cases of admiralty and maritime jurisdiction shall be made up as provided in general admiralty rule No. 52 of the supreme court." Id. civ.

Rule 52 of the general admiralty rules promulgated by the supreme court provides that:

"The clerks of the district courts shall make up the records to be transmitted to the circuit courts, on appeals, so that the same shall contain the following: * * * (6) The testimony on the part of the libelant and any exhibits not annexed to the libel. (7) The testimony on the part of the defendant and any exhibits not annexed to his pleadings."

There is a proviso at the end of this rule, as follows:

"Hereafter, in making up the record to be transmitted to the circuit court on appeal, the clerk of the district court shall omit therefrom any of the

pleadings, testimony, or exhibits which the parties, by their proctors, shall, by written stipulation, agree may be omitted, and such stipulation shall be certified up with the record."

There is no stipulation in the record of this case dispensing with the testimony taken in the court below. On the contrary, as appears by the record, counsel for appellees filed a protest, entitled "Notice as to Printing of Record," wherein they objected to the hearing of the appeal in this action on the transcript of the record in the lower court filed in the clerk's office of this court, upon the ground that the transcript should include the testimony taken in court and also the facts agreed upon in writing by counsel for both parties in the court below. It is a well-settled rule that an appeal in admiralty is, to all intents and purposes, a trial de novo. Yeaton v. U. S., 5 Cranch, 281; The Lucille v. Respass, 19 Wall. 73; The Charles Morgan, 115 U. S. 69, 75, 5 Sup. Ct. 1172; Irvine v. The Hesper, 122 U. S. 256, 267, 7 Sup. Ct. 1177; Anon., 1 Gall. 22, Fed. Cas. No. 444; The Roarer, 1 Blatchf. 1, Fed. Cas. No. 11,876; The Saratoga v. 438 Bales of Cotton, 1 Woods, 75, Fed. Cas. No. 12,356; The Havilah, 1 C. C. A. 77, 48 Fed. 684; Singlehurst v. La Compagnie Générale Transatlantique, 1 C. C. A. 487, 50 Fed. 104; The Philadelphian, 9 C. C. A. 54, 60 Fed. 423. As was said by Mr. Chief Justice Marshall in Yeaton v. U. S., supra:

"The majority of the court is equally of the opinion that in admiralty cases an appeal suspends the sentence altogether, and that it is not res adjudicata until the final sentence of the appellate court be pronounced. The cause in the appellate court is to be heard de novo, as if no sentence had been passed. This has been the uniform practice, not only in cases of appeal from the district to the circuit courts of the United States, but in this court, also."

If the cause is to be heard in the appellate court de novo, and the merits of the case are involved in the questions presented to the court for its consideration, it is essential and necessary that the court should have the testimony upon which the lower court based its decision. It is claimed that the act of February 16, 1875, entitled "An act to facilitate the disposition of cases in the supreme court of the United States, and for other purposes," has altered the practice, as defined in the above-entitled case, so far as admiralty appeals to the circuit court of appeals are concerned. That act (18 Stat. 315) provided:

"That the circuit courts of the United States, in deciding causes of admiralty and maritime jurisdiction on the instance-side of the court, shall find the facts and the conclusions of law upon which it renders its judgments or decrees, and shall state the facts and conclusions of law separately. * * * The review of the judgments and decrees entered upon such findings by the supreme court, upon appeal, shall be limited to a determination of the questions of law arising upon the record and to such rulings of the circuit court, excepted to at the time, as may be presented by a bill of exceptions, prepared as in actions of law."

In this case the transcript of record contains certain findings of facts found by the district judge, and it is contended that, for the pur poses of the question of law which the appellants seek to have this court determine, these findings of fact are sufficient and binding. It is to be observed that the district judge, in admiralty cases, is not re-

quired by law, nor does it appear to be the practice, to make findings of
fact. The general practice seems to be for the judge to render an
opinion, written or oral, whenever the exigencies of the case require it,
in which such facts are stated as the court deems the evidence sup-
ports and justifies the decree. But, however this may be, we are of the
opinion that the act referred to is inapplicable to appeals in admi-
ralty from the existing district courts to the present circuit courts
of appeal. The same question was raised in The Havilah, 1 C. C.
A. 77, 48 Fed. 684, where the circuit court of appeals for the Sec-
ond circuit used the following language:

"Obviously, that act does not apply to an appeal to the circuit court of ap-
peals. The eleventh section of the act of March 3, 1891, establishing the
circuit court of appeals, provides that 'all provisions of law now in force reg-
ulating the methods and system of review through appeals or writs of error
shall regulate the methods and system of appeals and writ of error provided
for in this act in respect of the circuit court of appeals.' By the act appeals
in admiralty henceforth lie direct from the district court to the court of
appeals, and no method or system of review by findings or bill of exceptions
was in force for the review by appeals in admiralty from the district court
when the act was passed. It would be unreasonable to hold that congress
intended a different practice to apply to the limited number of cases where
appeal lies from the circuit court to the circuit court of appeals (solely be-
cause they were pending and undecided when the act was passed) from
that which would apply to appeals in admiralty from the district court. As
the act of 1875 provided a method and system of review, through appeals,
only for such cases in the circuit court as went to the supreme court, there
seems no good reason for extending the general language of the eleventh sec-
tion of the new act to cover cases in the circuit court which are not to go to
that tribunal."

Therefore, both under the rules of the supreme court and of this
court, and of the doctrine laid down by the supreme court, that an
appeal in admiralty is a trial de novo, the testimony taken in the
court below should have been certified up in the transcript of record
on appeal, in the absence of a stipulation that it might be omitted.
In the case of The Alejandro, 6 C. C. A. 54, 56 Fed. 621, this court
said, with reference to the fact that the testimony had not been in-
cluded in the transcript of record:

"We are of opinion that the case is not presented in such a manner as to
require at our hands a review of the testimony. The record on appeal only
contains the 'judge's notes of testimony,' and deposition of one witness. Rule
52 (admiralty rules) describes what shall constitute the record on appeal to
the circuit courts, and, among other things, provides that it shall contain
'the testimony on the part of the libelant, and any exhibits not annexed to
the libel; the testimony on the part of the defendant, and any exhibit not
annexed to his pleading.' In making up the record the clerk may omit there-
from 'any of the pleadings, testimony, or exhibits which the parties, by their
proctors, shall by written stipulation agree may be omitted, and such stip-
ulation shall be certified up with the record.' No such stipulation appears in
the record. There is no certificate that the notes of the testimony contain
all the material evidence."

It does not appear, from the report of the case, that a motion to
dismiss the appeal on that ground was made, but the court used the
above significant language when asked to review the testimony on its
merits. However, inasmuch as no special objection was made to its
consideration, the court deemed it proper to say that they had read

the "judge's notes of testimony," and they were of the opinion that, when the same was considered in connection with his opinion in the case, the testimony in the record was sufficient to justify his conclusions, and to sustain the findings of the circuit judge. In the case of The Glide, 18 C. C. A. 504, 72 Fed. 200, it appeared, upon appeal to the circuit court of appeals for the Fourth circuit, that in making up the record on appeal the testimony taken at the trial could not be included in the record, for the reason that no part of it was reduced to writing, nor were any official notes of it taken. A motion was made to dismiss the appeal. It was sought to rectify this omission, on the part of the appellant, by taking de novo, before a notary public, the evidence of the witnesses who had testified in his behalf; giving notice to the proctors of the libelant of his intention so to do, and of the time and place selected. But the proctors for libelant declined to appear. When the testimony was taken, it was submitted to the district judge who had tried the case, to obtain his certificate to the fact that this was the purport of the testimony, or at least a part of the testimony, taken before him at the hearing. The district judge refused to give this certificate:

"First, because he knew of no law or practice which would justify him in doing so; and, second, because he could not, from his recollection or notes, certify that the testimony of the witnesses, so taken, was in substance the same as given before him."

The court of appeals (Judge Simonton delivering the opinion) said:

"The next ground for the motion [to dismiss the appeal] is that the record does not contain any of the evidence taken at the trial in the district court. This is strictly correct. The affidavits taken by the respondent after the trial of what the witnesses say they testified at the trial are in no sense evidence taken at the trial. We fully concur with the district judge that there is no law or practice which would justify him in granting the certificate asked by proctors for the claimant. The rule 14 of this court, clause 6 (11 C. C. A. cv., 47 Fed. vii.), requires that the record, in cases of admiralty and maritime jurisdiction, shall be made up as provided in general admiralty rule No. 52 of the supreme court. This rule No. 52 requires that the record shall contain the testimony upon the part of the libelant and the testimony on the part of the defendant, unless the parties agree, by their proctors, by written stipulation, that it may be omitted. There is no such stipulation here. Clearly, the record is incomplete. This court cannot pass on the merits of the case. Nor, in the absence of a stipulation by counsel, is it possible to supply the omission. We must have the evidence taken at the trial."

It was held, however, that as there was no rule or practice in the district court requiring the reduction to writing of evidence used at the trial, the case should be remanded to the court below, with instructions to grant a new trial. The court added this warning, after stating that there was no precedent, for or against the course, which suggested itself: Parties to cases were notified that that case could not be relied on as a precedent, and that in the future the party through whose omission or neglect the testimony, or any part of it, taken at the trial, is not before the court when the cause comes up on appeal, must suffer the consequences. The case just cited is to be distinguished from the case at bar, in that in this case it is not pretended that all the testimony was not taken down and reported. Under the circumstances, therefore, this court would not be justified in pursuing the same course followed by

the appellate court in the case cited; assuming, of course, that such a course would be proper and desirable under the circumstances of this case. We see no alternative to granting the motion to dismiss, unless it be true, as contended by counsel for appellants, that the assignments of error present simply a question of law; that the testimony is wholly unnecessary to the determination of this question, and, if certified up, would involve an expense practically prohibitory of an appeal; and that in any event the findings of facts made by the district judge in connection with his opinion supply all the material facts necessary to the consideration and determination of the question of law which it is claimed the assignments of error present. It is sought, further, to fortify the findings of fact by showing that no exceptions to them were taken by the appellees in the court below. On the other hand, it is strenuously contended by counsel for appellees that the court cannot review the case upon the findings, and without the testimony and exhibits; that such evidence would tend to show—which the findings do not—such inequitable and unconscionable conduct on the part of the appellant Cantillion in his dealings with the appellees, White and Johnson, as would justify the decision of the court below in allowing their claims for wages as hunters on the schooner M. M. Morrill, in preference to the amount claimed by the intervening libelant, Edward Cantillion, for his wages as master, and advances and amounts due him upon the several notes and mortgages set out in the findings of fact of the court below. A perusal of the opinion of the district judge satisfies us that he decided the case largely upon the peculiar state of facts presented to him, particularly with reference to the conduct of Cantillion in his dealings with White and Johnson. The facts, as they are stated in the opinion, are as follows:

"In this case the libelant, Charles H. White, and the intervener, S. N. Johnson, are suing to recover money earned by and due to them for their services as hunters on a sealing voyage in the North Pacific Ocean. The case is defended by A. S. Nelson, one of the owners of the vessel, and by Edward Cantillion, who was master of the vessel on the voyage. Cantillion was owner of one-third of the vessel, and he sold his interest to said libelant and intervener, conveying one-sixth to each, for which he received from Johnson $350, and a promissory note for $350, and from White a promissory note for $700; and, to secure payment of said notes, he received mortgages upon the interests of each in the vessel. He also held mortgages from the other owners upon all of their interests. He then entered into a contract with the owners, by which he undertook to furnish supplies for the voyage, and to go as master, for which he was to be paid a stipulated sum for wages, and also to have a certain amount for each seal skin secured, and one-fourth of the proceeds from all seals which he should kill; and he was to be repaid for his advances for supplying the vessel, with interest. He then hired the libelant and said intervener to go on said voyage as hunters, agreeing to pay them for their services one-fourth of the proceeds of all seal skins which they should secure. He also made a special contract with them, by which one-half of their earnings on the voyage should be applied to pay their indebtedness to him upon said promissory notes. The voyage proved to be unprofitable. Cantillion sold the seal skins secured, and from the proceeds thereof has paid himself his wages in full, and his compensation at the agreed rate for all seals which he individually killed; and after deducting such disbursements, and applying the remainder on account of advances which he made for supplies, there remains due to him a balance of nine hundred and forty-three and eight one-hundredths ($943.08)

dollars, and the individual indebtedness of the several owners, secured by mortgages on the vessel, remains wholly unpaid. The libelant acknowledges to have received on account of his wages the sum of one hundred and thirteen and two one-hundredths ($113.02) dollars, and there remains unpaid two hundred and fifty-nine ($259) dollars. Johnson received, on account of his earnings one hundred and eighteen ($118) dollars, and there remains unpaid two hundred and nine ($209) dollars. These balances Cantillion has taken out of the proceeds from the sale of the seal skins which came into his hands, and claims the right to retain the whole thereof, on account of the indebtedness to him for supplies furnished, and the promissory notes above mentioned."

After discussing the legal aspects of the case, the district judge continues:

"With the acquiescence of all parties interested, the vessel has been sold by the marshal, and Cantillion became the purchaser, for the sum of $1,800, and he is now claiming the proceeds of the sale, after payment of costs, to apply on the indebtedness of the several owners to him; so that, if he should prevail in defeating the libelant and the intervener from recovering their wages, the result of the adventure may be summed up as follows: Cantillion will have the $250 paid by Johnson, and for the balance of less than $1,000 on account of supplies, and the marshal's costs upon the sale of the vessel, will have absorbed the entire earnings of the vessel and her crew, and acquired the vessel itself, and still hold the libelant and the intervener indebted to him for a considerable part of the promissory notes given for the purchase price of their interests in the vessel. All this by his cleverness in persuading these men to purchase his interest in the vessel before hiring them. I consider that the justice of the case requires that these men should receive their wages from the money in the registry, and it will be so decreed." 78 Fed. 509.

We cannot say that the district judge erred, unless we have all the evidence before us for our consideration. If, as contended for by counsel for appellants, there is only a question of law presented for our determination,—the question being whether or not the appellees, being part owners of the vessel, can have their claims preferred to those of Cantillion,—then, in accordance with the rules and the regularity of appellate procedure, a stipulation dispensing with the testimony should appear in the record. While it may be true that the ultimate question to be determined by the court resolves itself into one of law, still it is plain that the determination of the question depends largely upon the nature of the evidence presented in the lower court. It is undoubtedly the general rule, in admiralty, that a part owner has no lien on the vessel, to the prejudice of others extending credit to the vessel. Patton v. The Randolph, Gilp. 457, Fed. Cas. No. 10,837; Petrie v. The Coal Bluff No. 2, 3 Fed. 531; The Short Cut, 6 Fed. 630; The Queen of St. Johns, 31 Fed. 24; The Lena Mowbray, 71 Fed. 720. But in his opinion the district judge states that there were "no innocent creditors or purchasers to be prejudiced by the discovery of a secret lien," and he held that under the peculiar facts of the case the rule was inapplicable, as against the claims of White and Johnson. While it is true that they were part owners, they had rendered maritime services as hunters on the sealing voyage, in which Cantillion acted as master, he being at the same time mortgagee of the interests of the appellees in the vessel acquired from him as above stated. If it would have been inequitable to give the claims of Cantillion preference over those for hunters'

wages, under the peculiar circumstances of the case as presented to the court below, we cannot say, in view of the fact that we have not the evidence itself before us, that the court erred in holding that the rule was inapplicable. A court of admiralty, while not a court of general equity, yet acts upon equitable principles. Dean v. Bates, 2 Woodb. & M. 87, Fed. Cas. No. 3,704; Petrie v. The Coal Bluff No. 2, 3 Fed. 533; The Eclipse, 135. U. S. 599–608, 10 Sup. Ct. 873. See, also, The Juliana, 2 Dod. 521. Under the circumstances of this case, we think that the decision of the district court should be affirmed. Our decision must, of course, be understood as being limited to the peculiar state of the case as presented by the record. The judgment of the district court is affirmed.