## THE E. A. PACKER.

### SCULLY v. NEW JERSEY LIGHTERAGE CO.

(Circuit Court of Appeals, Second Circuit. October 17, 1893.)

#### No. 87.

1. ADMIRALTY APPEALS—SUPREME COURT—CIRCUIT COURT OF APPEALS.
    An expression of opinion on the merits by the supreme court in reversing and remanding an admiralty cause, which was again tried in the circuit court after the passage of the judiciary act of March 3, 1891, is not binding on the circuit court of appeals when, according to its practice, the case is brought before it on all the evidence, which shows an additional material fact not in the record before the supreme court, and the absence of which that court expressly recognized.

2. COLLISION—DAMAGE TO TOW.
    A vessel guilty of fault contributing to a collision with a tow, which is free of fault, is liable therefor, although the tug in charge of the tow was also in fault, and is not a party to the suit.

3. SAME—INSPECTION RULES—NEW YORK HARBOR.
    A tug rounding the Battery in New York harbor from the North river into the East river with a tow is subject to rule 2 of the supervising inspectors, providing that, when vessels approach each other obliquely, the one having the other on her starboard hand and being herself on the other's port hand shall put her helm to port, and pass under the other's stern; and she is not excused from obedience thereto by the fact that, as the other vessel is approaching obliquely across the East river, the maneuver will throw her out into the ebb tide, and cause her great inconvenience and delay. 49 Fed. Rep. 92, affirmed.

4. SAME—CUSTOM.
    The mere fact that vessels in rounding the Battery often agree with each other to depart from the inspectors' rule, so as to allow the vessel going against the tide to keep next the piers, is not sufficient to excuse a vessel for disregarding the rule without any agreement.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Admiralty. Libel for collision filed by the New Jersey Lighterage Company against the steam tug E. A. Packer, John Scully, claimant. There was a decree for libelant in the court below, (49 Fed. Rep. 92,) and the claimant appeals. Affirmed.

E. D. McCarthy, for appellant.

R. D. Benedict, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The libel in this case was filed to recover damages for the loss of the barge Atlanta, which was sunk in a collision with a barge in tow of the E. A. Packer, upon her port side, at about 4 o'clock in the afternoon of October 25, 1880, off piers 1 or 2 in the East river. The Atlanta was in tow of the tug Wolverton, on a hawser of about 20 fathoms, and was bound from Roberts' stores, Brooklyn, up the North river. The Packer had come down the North river, and rounded the Battery, being bound up the East river, to Sixty-First street. After sighting each other, the Packer starboarded and the Wolverton ported, with the result above indicated. The Wolverton, after the collision, betook herself out of the jurisdiction. A libel filed against her in the eastern district of Pennsylvania by the master of the Packer's tow was dismissed, (13 Fed. Rep. 44,) but, being out of this jurisdiction, she was not made a party to the suit at bar.

The peculiar history of this suit makes it unnecessary to rehearse the facts in detail; to do so would be but needless repetition, as they will be found stated at great length in the various opinions hereinafter referred to.

The district court held the Wolverton in fault for "persisting in an unauthorized and dangerous attempt * * * to run into the eddy between the Packer and the shore." It exonerated the Packer principally because, in its judgment, the evidence showed a "prevailing custom in navigating around the Battery on the ebb tide," which gave it the right to rely on the Wolverton's "observing that usage," and permitted the Packer, notwithstanding rule 2 of the supervising inspectors, (quoted post,) to go to the left, giving the appropriate signal of two whistles, and to require the Wolverton to navigate accordingly. 20 Fed. Rep. 327. An appeal was taken to the circuit court, which reversed the decree of the district court, holding that upon the proof "no practice is shown prevailing with that uniformity which is requisite to a usage applicable to the situation between the vessels here, or which justified the Packer in insisting upon the right of keeping inside." That court held the Packer in fault, because, when the vessels "saw each other, the Packer had the Wolverton on her starboard bow, and the Wolverton had the Packer on her port bow. The vessels were then on courses crossing each other and converging towards the New York shore, and it was the duty of the Packer, under the nineteenth rule of navigation, to keep out of the way," which she should have done "by [porting] her wheel and [stopping] and [reversing] her engine in time to avoid the collision." The opinion of the circuit court, filed July, 1886, is not reported, but its findings are incorporated in the opinion of the supreme court, 140 U. S. 360, 11 Sup. Ct. Rep. 794.

The claimant thereupon appealed to the supreme court. After an elaborate discussion of the practice and procedure upon appeals under the act of February 16, 1875, (18 Stat. 315,) that court held that the appellant was "entitled to a finding" of the circuit court touching a proposition which he had submitted to that court, as follows:

"Sixth. The porting of the Wolverton's wheel when she was about 200 feet from the Packer was a change of four or five points

from her course." The supreme court therefore reversed the decree, and remanded the case to the circuit court, "with directions to proceed therein in conformity with the opinion of [the supreme] court."

The circuit court thereupon found the fact as to the Wolverton's change of course in accordance with the request, but refused to find that the Wolverton was solely in fault, and again decreed in favor of the libelant against the Packer. 49 Fed. Rep. 92. From that decree this appeal is taken.

Meanwhile the practice in admiralty was materially changed by the passage of the act of March 3, 1891, establishing United States circuit courts of appeals, and the case now presented for review by this court differs from that considered by the supreme court, not only by reason of the additional finding, but because, the provisions of the act of 1875 not applying to appeals to the United States circuit court of appeals, (The Havilah, [2d circuit] 1 U. S. App. 1, 1 C. C. A. 77, 48 Fed. Rep. 684,) all the evidence in the case is brought up for consideration. Comparatively little of it was before the supreme court.

The opinion of the supreme court contains the following:

"From this statement of their respective headings it is quite evident, and the court [meaning the circuit court] also finds as a fact that they were upon crossing courses; that the Packer had the Wolverton on her starboard side, and was bound, under the nineteenth rule of section 4233 to keep out of her way. In fulfilling this obligation, however, she was entitled to act, within the limitations imposed by the requirements of good seamanship, upon the judgment of her master, and to put her helm to port or starboard; and there was a correlative duty, no less imperative, on the part of the Wolverton 'to keep her course.' Rule 23, [citing cases.] While this duty of avoidance is ordinarily performed by porting and passing under the stern of the other vessel, and while this is evidently, under ordinary circumstances, the safer and more prudent course, cases not infrequently occur where good seamanship sanctions, if it does not require, that the maneuver shall be executed by starboarding and crossing the bows of the approaching vessel. Of course in doing this the steamer takes the risk that the approaching vessel, while fulfilling her own obligations of keeping her course, may reach the point of intersection before she has passed it herself; and hence at night, or in thick weather, the maneuver would be likely to be attended with great danger. In the present case, however, there were circumstances which indicate that the selection of this course may have been such an exercise of discretion upon the part of the master as was not inconsistent with sound judgment and good seamanship. It was broad daylight, the weather was clear, and a careful lookout could not fail to hear the signals of an approaching vessel, and to estimate properly her course, her bearings, and her distance. There was a strong tide ebbing out of the East river, and the Packer was making her way slowly and with some apparent difficulty against it. It was obviously to her advantage to keep as near to the piers, heading as she was, directly against the tide, as it was possible to do, since such a decided porting as would be necessary to avoid the Wolverton and her tow would have compelled her to take the full force of the tide upon her port side, and exposed her to a strong outward drift, as well as to the probability of the Atlanta sagging down upon her. Whether the starboarding of the Packer was a fault or not would depend largely upon the question whether, assuming that the Wolverton kept her course and maintained her then rate of speed, either vessel would pass the point of intersection before the other reached it. If it were clear that no collision would have occurred had the Wolverton kept her course, then the starboarding of the Packer was not a fault, since the point of intersection would be either ahead or astern of the Packer; but, if

such starboarding was likely to involve risk of a collision, then, of course, it was a fault.

"It was suggested upon the argument that there was a rule of the supervising inspectors making it obligatory upon a crossing steamer to avoid the one having the right of way by porting her helm in all cases. But no such rule is incorporated in the record or the briefs, and it is not a regulation of which we can take judicial notice. But, even if such rule were proved, it is by no means clear that the circumstances of this case would not bring it within the exception contained in the twenty-fourth rule of 'Special Circumstances' requiring a departure from the general regulations."

The appellant contends that this declaration of opinion is such a disposition of the merits of the controversy that, the additional finding of fact being made as he prayed, the only thing left for the circuit court to do was to dismiss the libel. Had the old practice remained undisturbed, and were the case again presented to the supreme court with nothing added to the old record but the new finding, it is probable that court would make such a disposition of the suit. But the situation is wholly different. All the testimony in the case came before the circuit court on the second hearing and by the appeal is brought before this court, and the existence of the very rule of the supervising inspectors, which the supreme court refused to consider because it was not proved, is now a fact in evidence. Under these circumstances it was clearly the duty of the circuit court to pass upon the whole case, and in disposing of this appeal we are not constrained by the expressed opinion of the supreme court upon the incomplete case which that tribunal had before it; and, indeed, the supreme court itself most carefully avoids passing finally upon the rights of the parties.

The rule of the supervising inspectors which has been referred to is as follows:

"Rule 2. When steamers are approaching each other in an oblique direction (as shown in diagram of the fourth situation) they shall pass to the right of each other, as if meeting 'head to head' or nearly so, and the signals by whistle shall be given and answered as in that case specified."

And in directions accompanying the diagram referred to it is provided that:

"A. [the vessel having the other, B., on her starboard hand, and being herself on the port hand of B.] should put his helm to port and pass astern of B., while B. should continue on his course or port his helm, if necessary to avoid collision, each having previously given one blast of the steam whistle, as required by the rules when passing to the right."

That when they sighted each other the Packer had the Wolverton on her starboard hand seems not to be seriously disputed. After a careful consideration of the testimony, we are satisfied that she was herself on the port bow of the Wolverton. Such is the concurrent testimony of all libelant's witnesses, and the Packer's pilot at first so stated, although he afterwards insisted that the Wolverton was head on, and later that he was on her starboard side. The vessels were therefore in the situation where the inspectors' rule required a vessel situated as the Packer was to "put his helm to port and pass astern" of the other, "having previously given one blast of the steam whistle." The Packer did not do so, nor did she even hold her course, which her counsel contends

was sufficient to insure safety, provided the Wolverton made no change. She was under a starboard wheel when she saw the Wolverton; at once blew two whistles, and, although no answer was received, immediately starboarded still more. So far as her liability is concerned, the only question is, was this violation of the rule, excusable, or, if not excusable, it is plain that it did not contribute to the castastrophe? That the Wolverton was also in fault would not warrant a reversal in this case. The Atlanta was free from fault, and is entitled to a judgment against either vessel which it libels and shows to be guilty of a fault contributing to the collision.

The opinion of the supreme court discussed the question solely from the point of view of a vessel obliged to fulfill the requirements of the nineteenth rule of section 4233, (the starboard-hand rule,) which directed her to keep out of the way, but yet left her the choice of thus keeping out of the way either by porting or starboarding, although ordinarily that duty of avoidance is performed by porting, and passing under the stern of the other vessel. The utmost that is held by the supreme court in this case is that upon the facts before it there might be found sufficient excuse for the Packer's undertaking to perform that duty by crossing the bows of the approaching vessel. But one most important fact was not before that court. By reason of the circumstance that the record contained no proof of the rules of the supervising inspectors, it was constrained to ignore the fact that, besides the considerations of light and weather, courses, bearing, speed, and distances, there was another element of the situation, essential to a correct decision, to be taken into account by the master of the Packer, namely, that he was navigating in waters where a local rule directed his choice of maneuvers, and advised the approaching vessel what that choice would be. If an effort by starboarding to cross the bows of an approaching vessel would have been "attended with great danger" if attempted at night or in thick weather, it would seem to be equally dangerous when attempted in the light of a controlling rule of navigation which clearly advised such approaching vessel that such effort was precisely the one thing which would not be attempted, and directed that vessel not only to keep her course, but even to assist a diametrically opposite maneuver by herself porting. That the supervising inspectors have made rules applying to navigation in the waters where these vessels were is now proved. That one of those rules covers the situation in which they found themselves at sighting is plain. Their authority to make such rules was not disputed on the argument; nor on the point involved here is there any apparent inconsistency between them and the rules of section 4233. The rules prescribed by authority, so far as they apply, constitute the law by which courts must test the navigation of vessels when brought in question before them. One of the witnesses, an experienced tugboat pilot, ingenuously remarked that "the law is against our rules of navigation around here;" that "there is no law in this world ever can be made, in my opinion, to regulate the towing or sailing around the harbor of New York;" and that "the law,

as I understand it, is made by men that don't understand it." All this may or may not be so, but a rule regulating the movement of a boat situated as the Packer was has been made, and violation of such rule is a fault, unless the vessel violating it can show some excuse, such as the twenty-fourth rule of section 4233 contemplates, for her disobedience.

The supreme court held that it was "by no means clear that the circumstances of this case would not bring it within the exception contained in the twenty-fourth rule of 'Special Circumstances,' requiring a departure from the general regulations." But the whole case was not before that court, and we concur with both the district and the circuit court in the conclusion that the Packer might, on first seeing the Wolverton, have gone right out from the eddy into the East river tide, and thus have got around the Atlanta in the way prescribed by the inspectors' rules; that there was no "immediate danger" in such a maneuver, and no condition in the situation which would have rendered it unsafe for her to take her course to starboard. It would undoubtedly have been inconvenient for the Packer to do so. The tide would have swept her round, and far astern of her course. She would have had to make up her lost ground with a heavy tow against an ebb tide. But mere inconvenience will not excuse her departure from the rules. Such departure must be "necessary to avoid immediate danger." Rule 24. It may have been proper for the Packer to suggest to the Wolverton, as she did by her two-whistle signal, that they should agree to courses, which would enable them to pass each other otherwise than as rule 2 required, thereby making her own navigation easier, and not seriously inconveniencing the Wolverton,—a maneuver which, if co-operated in by the Wolverton, would seemingly have been free from any risk of collision; but she had no right to depart from the rule, in the absence of an expressed assent on the part of the Wolverton, simply for her own convenience.

The district judge exonerated the Packer on the ground that a "prevailing custom in navigating around the Battery on an ebb tide" gave her the right to insist on keeping near the piers, notwithstanding the inspectors' rule. There may be such a custom, but in the record before us there is not sufficient evidence to prove it. Three witnesses testify to its existence, but twice that number—of equal experience in harbor navigation—swear that, though vessels do frequently pass each other in that way, there is no rule or general custom as to which side of each other they shall go. The mere fact that vessels often agree with each other to depart from the rule when rounding the Battery is not sufficient to excuse the vessel which, without securing assent to such an agreement, takes upon herself the responsibility of departing from it, merely for her own convenience. We are unable to find that the failure of the Packer to obey the rule did not contribute to the collision, and therefore concur with the circuit court.

As to the navigation of the Wolverton, it is unnecessary for us to express an opinion, as she is not before the court.

Decree of circuit court affirmed, with interest and costs.