## THE GREENVILLE.[1]

### THE DEVOE.

### THE SCOW NO. 40.

### NEW YORK & N. R. CO. v. THE GREENVILLE and THE SCOW NO. 40 and THE DEVOE.

#### (District Court, S. D. New York. October 30, 1893.)

**1. ADMIRALTY—PRACTICE—RULE 59—ANSWERS BY VARIOUS PARTIES.**
Where a new party defendant is brought into a suit by petition of an original defendant under the fifty-ninth admiralty rule, the libelant should answer the petition, the petitioner should answer the libel, and the new party should answer both libel and petition.

**2. COLLISION—VESSELS MEETING IN NARROW STREAM—PROPER CHANNEL.**
The tug G., with a scow astern on a short hawser, came down the Harlem river, and improperly shaped her course so as to pass through the easterly passage of the Third Avenue bridge, which was on her port hand, instead of taking the unobstructed westerly or starboard passage, whereby her scow was brought into collision with a railroad float in tow alongside the tug D., which was coming up through the easterly passage, and which, owing to the bridge, the narrow stream, and the absence of lights on the G. indicating a tow, or on the tow to show its position, was unable to do anything to avoid collision. *Held,* that the G. alone was liable.

In Admiralty. Libel for collision brought by the New York & Northern Railroad Company against the steam tug Greenville and scow No. 40, the tug Devoe being subsequently brought in on petition of the original defendants. Decree against the Greenville alone.

Carpenter & Mosher, for libelant.
Benedict & Benedict, for claimants.

BROWN, District Judge. About 7:30 o'clock in the evening of September 15, 1892, the libelant's car float No. 2, being in tow on the starboard side of the tug Devoe, while proceeding up the Harlem river, and soon after passing through the easterly passage of the draw of the Third Avenue bridge, came in collision with scow No. 40, which was coming down the river in tow of the steam tug Greenville, upon a hawser 25 or 30 feet in length. The tugs, after the exchange of a signal of two whistles, were passing starboard to starboard; and the float, striking the starboard bow of the scow, which projected probably some 10 feet beyond the line of the Greenville, ran up over the starboard bow of the scow upon her starboard bitt, which was thereby forced through the bottom of the float, and held her fast.

The original libel was filed to recover damages against the tug Greenville. On petition by the latter, under the fifty-ninth rule of the supreme court in admiralty, the Devoe was brought in as an additional defendant. The claimant of the Devoe, construing the fifty-ninth rule as requiring from the new party an answer to the libel only, did not answer the petition, but did answer the libel. As

[1] Reported by E. G. Benedict, Esq., of the New York bar.

the libel, however, made no charges of fault against the Devoe, the Devoe's answer was in effect an admission of the averments of the libel, and closed with praying that the petition, as respects the Devoe, be dismissed, though the answer did not controvert any of the statements of the petition. Thus no issue was presented by the pleadings as between the two defendant tugs; and the object of the fifty-ninth rule, as regards the pleadings, was not fulfilled.

The intent of that rule was, I think, misconstrued. After providing that a defendant, by petition, may bring in another vessel or third party, alleged to be in fault, the rule provides that if the process issued upon the petition "be duly served, such suit shall proceed as if such vessel or party had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant of such vessel or such new parties shall answer the libel," etc.

The former part of the rule provides for what the original defendant may do as petitioner. The clause requiring "the other parties to answer the petition," means all the parties to the cause other than the petitioner, including the new defendant already served with process and thereby brought into the cause as a party defendant; and the latter by the next clause is also required to answer the libel. This is the grammatical, as well as the logical, construction of the rule, by which it is intended that all the litigants shall answer the charges made against them respectively.

The Devoe was, accordingly, on application of the Greenville, directed to answer the petition. Being owned by the libelant, her answer, as respects the navigation, was in substance the same as the original libel.

Upon the merits of the controversy, which have been very strenuously contested as between the Greenville and the Devoe, upon very conflicting testimony I think that the responsibility for this collision should be placed wholly upon the Greenville; because without reason or necessity, in approaching the draw of the Third Avenue bridge, she shaped her course for the easterly passage, which was on the port hand, instead of taking the starboard or westerly passage. This was in violation of the ordinary rule of navigation; and it materially and unreasonably obstructed and endangered the passage of the Devoe and her tow through the easterly side of the draw. The E. A. Packer, 58 Fed. 251.

The Greenville and her tow were, as I find, very nearly in the line of the easterly passage, and probably within about 300 feet of it at the time of the collision; whereas, she ought to have been shaping her course for the westerly passage, as there was nothing to prevent her doing so, from the time when she passed through the Fourth Avenue draw. The float in tow of the Devoe was large and cumbersome; it was 200 feet long; with the Devoe alongside she took up the entire width of the easterly passageway, save 3 or 4 feet. Such tows were in the habit of passing through the draw of the bridge; and the easterly passage was their usual and proper course in going up. The Greenville, on passing through the Fourth

Avenue bridge, if she had not already heard the Devoe's signal for the Third Avenue draw to be opened, had, nevertheless, no reason to expect that the easterly passage would be free; nor if she did expect that, had she any right, except at her own risk, within such narrow limits as the Harlem river affords for navigation between the two bridges, to shape her course for the easterly passage to her own left, when the westerly passage to her right was unobstructed.

The weight of evidence is that she was not carrying two vertical lights to indicate a tow; while the scow behind her was low, not easily distinguishable in the night, extended considerably beyond the line of the Greenville, and carried no light to indicate this fact. These circumstances are sufficient to explain the collision, and to make the Greenville primarily responsible for it; and the Devoe should not be held chargeable, except upon reasonably satisfactory evidence that notwithstanding the circumstances and the difficulties of the situation, she might, by reasonable diligence and skill, have avoided the collision.

The libelant contends that the Devoe might have avoided the collision by reversing earlier, and by putting her helm hard-a-starboard earlier than she did; and that under the exchange of two whistles she was bound to do so. But the straightened limits of the navigation open to her seem to furnish a sufficient answer to this contention. She was certainly in no fault for answering the Greenville's signal with two whistles; for her best course in the situation of the Greenville, was undoubtedly to the left. Her answer meant only that she would do what she reasonably could to avoid collision; and she was only bound to take measures to avoid what she had reason to suppose was before her, viz., the Greenville alone, and not the scow behind the Greenville, which was not then distinguishable. The pleadings and the evidence leave no doubt in my mind that the Devoe did go far enough to the westward to avoid the Greenville; and that the contact with the Greenville arose after the starboard corner of the float had overrun the starboard corner of the scow, which extended considerably beyond the Greenville; and that no contact with the Greenville would have happened but for the collision with the scow astern of her. Taking the pleadings and the testimony together, there is not sufficient evidence to satisfy me that the Devoe did not go to the westward as much, and as quickly, as she could reasonably have been expected or required to do under the peculiar circumstances. For the arm of the open draw extended 100 feet above the abutment. This had to be avoided, both by the tug and by the float. The stern of the float extended about 100 feet beyond the stern of the tug; and after the stern of the float was out of the draw, there was scarcely more than 100 feet to the collision. The Devoe could not stop in the draw; nor could she safely change her heading much until the float had wholly passed through; the captain testifies that he had to look out not to hit the arm of the draw. And in the ebb tide specially, he had to avoid in backing the risk of being carried against the abutment, and the arm of the draw.

Under these circumstances, there seems to me no satisfactory evidence that the Devoe and her float were not managed with such reasonable skill as was required of her; or that she should have backed, or starboarded more, or earlier, than she did.

The position of the Greenville and her tow was evidently important in this relation. I have found that she was only about 300 feet above the bridge, not so much from the estimates stated in the direct testimony, which could not be expected to be accurate, especially in the nighttime, as upon the other circumstances in evidence. The report by the pilot of the Greenville, made shortly after the accident, is satisfactory evidence of her position at the time when the whistles were exchanged; viz., "halfway between the two bridges;" that is, about 600 feet above the Third Avenue bridge. As the Greenville was without doubt proceeding under one bell, and had the beginning of the ebb tide in her favor; and as the Devoe was also under one bell, with some tide against her; and as the latter stopped before even the tug had got through the draw, and soon backed, there is no probability that the Devoe advanced, after the exchange of whistles, more than the Greenville advanced. This would make the collision about 300 feet above the bridge, or within 100 feet after the Devoe's float had cleared it. Within such narrow limits, and hemmed in to the westward, as the Devoe and her tow were until the extended arm of the draw was passed, I cannot find any fault on their part established; and the decree, therefore, should be against the Greenville only, with costs.