CHICAGO INS. CO. v. GRAHAM & MORTON TRANSP. CO.

(Circuit Court of Appeals, Seventh Circuit.   April 23, 1901.)

No. 691.

**1.** ADMIRALTY—PRACTICE ON APPEAL—ASSIGNMENTS OF ERRORS.
   In the interest of uniformity in practice, rule 11 of the circuit court of appeals for the Seventh circuit (31 C. C. A. cxlvii., 90 Fed. cxlvii.), which requires an assignment of errors to be filed and returned with the record, will be held to apply to appeals in admiralty. This, however, does not prevent the court from permitting new pleadings or new evidence in proper cases, and, under section 10 of the act creating such courts, the cause will be remanded to the court below for decree as in case of other appeals.

**2.** MARINE INSURANCE—CONSTRUCTION OF POLICY—EFFECT OF RIDER.
   The charterer of a vessel, which it employed in the carrying business, took an open cargo policy for $5,000, containing the provision, "but no damage to be paid unless amounting to 5 per cent." By a rider it was provided, "Warranted free from particular average under 5 per cent.,

each kind of goods and each bill of lading interest subject to separate average." *Held*, that the effect of such rider was merely to change the liability of the insurer with respect to what should be deemed a partial loss thereunder, by making the 5 per cent. provision applicable to each kind of cargo and each bill of lading interest separately, instead of to the cargo as a whole, so that liability attached in case any one species of cargo or bill of lading interest suffered damage to the extent of 5 per cent., but extending only to such species or interests which sustained damage to that extent; but that, a loss under the policy having been ascertained, the amount to be paid by the insurer must be determined by the usual rules applicable to marine policies, the same as would a loss on an entire cargo, if the rider had been omitted; the insured standing as his own insurer to the extent of the value of the cargo above the amount of the policy, and sharing a proportionate amount of the loss on each part

In Admiralty. Appeal from the District Court of the United States for the Northern District of Illinois.

The Graham & Morton Transportation Company filed its libel in personam in the court below to recover a sum of money claimed to be due on a policy of marine insurance issued to it by the Chicago Insurance Company. The assured was engaged in the business of transporting and carrying by water, for hire, passengers and freight between different ports and places on the Great Lakes and waters emptying into the seas, and on the 9th of December, 1897, took from the Chicago Insurance Company an open policy for the sum of $5,000, and a like policy for a like amount in another insurance company, covering property shipped on the steamer City of Duluth, of which the libelant was the charterer. The policy was in the usual form, containing the ordinary "sue and labor" clause, and provided, "but no damage to be paid unless amounting to five per cent." There was attached to the policy a rider as follows: "By this policy of insurance on account of the Graham & Morton Transportation Company, loss, if any, payable to assured. Do make and cause five thousand dollars ($5,000) to be insured from noon, December 9th, 1897, to noon of April 1st, 1898, on all grain, flour, general merchandise, etc., shipped on board the propeller City of Duluth. * * * Warranted free from particular average under 5%, each kind of goods and each bill of lading interest subject to separate average. Warranted to navigate Lake Michigan, principally between Milwaukee or Chicago and St. Joseph or Benton Harbor, during the life of this policy. * * * It is stipulated and agreed that, if any loss shall occur under the policy, same shall be reduced by the amount of said loss, unless the amount of loss shall at once be reinstated, and premium paid thereon at the pro rata rate of 6½% for the unexpired term of the policy." On January 26, 1898, the steamer City of Duluth departed the port of Chicago, bound for the port of St. Joseph, Mich., laden with a cargo of 29,000 bushels of corn, 2,000 sacks of flour, and general merchandise, consigned to ports on the eastern shore of Lake Michigan. On the evening of that day the vessel, in attempting to enter the port of St. Joseph, without fault of her own, stranded upon a bar at the mouth of the harbor, sprung a leak, filled with water, and became a total loss, damaging a large part of the cargo, much of which, however, was saved in a damaged condition by the assistance of tugs, lighters, and additional aid. Two adjustments of loss were made, each party procuring one. There is an apparent discrepancy in the two adjustments with respect to the value of the corn,—one stating it at $8,700; the other, at $7,830. The value of the flour was $5,142.86; and of the miscellaneous cargo of merchandise, $4,344.29. The corn was a total loss. The flour was damaged in excess of 5 per cent., and the damage to general merchandise was less than 5 per cent. The adjuster of the libelant made the total claim $12,219.48, to be paid one-half by each insurance company. The other adjuster made the total claim $10,467.34, and apportioned $3,022.25 to each insurance company, and $4,422.84 to owners uninsured. The different result in the two adjustments arises chiefly from the different theories upon which they are made,—the one. that the insurance was in gross of an entire cargo; the other, that it was

enumerated and distributed insurance on species. At the hearing the district court adopted the latter theory, and pronounced accordingly. A motion is made here to dismiss the appeal for the reason that an assignment of errors was not filed in the court below until the next stated term after the appeal was allowed, and that the order allowing the filing of the assignment of errors nunc pro tunc as of the date of the allowance of the appeal was unauthorized and void.

Charles E. Kremer, for appellant.

Robert Rae, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

The motion to dismiss presents the question whether in an admiralty cause an assignment of errors is essential for the purpose of an appeal. It may not be denied that, prior to the organization of the circuit courts of appeals, upon appeal in an admiralty cause from the district to the circuit court no assignment of errors was necessary. The cause was there to be tried anew, as if no decree had been rendered; the appeal superseding and vacating the decree from which it was taken. The cause in the circuit court could be heard on new pleadings and further evidence. Yeaton v. U. S., 5 Cranch, 281, 3 L. Ed. 101; The Lucille, 19 Wall. 73, 22 L. Ed. 64; The Hesper, 122 U. S. 256, 7 Sup. Ct. 1177, 30 L. Ed. 1175. A decree was entered in the circuit court, and enforced by that court without remand of the cause to the district court. The Louisville, 154 U. S. 659, 14 Sup. Ct. 1190, 25 L. Ed. 771. Indeed, rule 52 in admiralty expressly provided that "no reason of appeal shall be filed or inserted in the transcript." Under the act creating the circuit courts of appeals, it has seemed to the writer that appeals in admiralty now come to this court, as formerly they went to the circuit court, to be heard here as formerly heard there, and, it may be, upon new pleadings and upon new evidence. Such he understands to be the ruling of this court in Gilchrist v. Insurance Co. (C. C. A.) 104 Fed. 566. He is, however, of opinion that, under section 10 of the act creating these appellate courts (31 C. C. A. xxxiii., 90 Fed. xxxiii.), it was not contemplated that an original decree should be entered here, but that the cause should be remanded to the district court for sentence and execution. The question, however, is one of practice only, and it is more desirable that the practice should be settled and uniform than that it should conform to any previous practice; and as my Brethren are of opinion that an assignment of errors is desirable, and to conform the practice to that circuit which has most to do with the admiralty, we hold that rule 11 (31 C. C. A. cxlvi., 90 Fed. cxlvi.) applies to admiralty as to all other cases, and that an assignment of errors is essential, and should be returned with the record, and that paragraph 6 of rule 14 (31 C. C. A. clviii., 90 Fed. clviii.) so far as by reference to rule 52 in admiralty it seems to be in conflict, must be disregarded. This, however, does not prevent the court from permitting new pleadings or new evidence in proper cases. We are also of opinion that no new decree should be entered here, but that, as in other appeals, the cause

should be remanded to the court below. We understand this practice to be in substantial conformity with the rules of the Second circuit, adopted July 1, 1892, as amended October 5, 1892. Rule 10 (1 U. S. App. 717, 40 C. C. A. vi., 100 Fed. vi.). Our rule 11 reserves to the court the right to "notice a plain error not assigned," and in view of the doubt heretofore existing in this circuit with respect to the correct practice, we are not inclined in this case to disregard any substantial error because not assigned, assuming that the assignment of errors here, offered at a new stated term of the court, could not be directed to be filed nunc pro tunc as of a day of a prior term at which the appeal was allowed, because there was no omission to enter anything which had actually been done at that term. The Bayonne, 159 U. S. 687, 16 Sup. Ct. 185, 40 L. Ed. 305.

Coming then to the merits, we are confronted with the question of the proper construction of this contract of insurance. The rider, of course, controls the interpretation to be placed upon the policy, if there be conflict. It may, perhaps, tend to a better comprehension and solution of the question if we first ascertain the character and extent of the liability under the policy without the rider, and then consider the meaning of the language of the rider and its effect. The policy is the ordinary form of open cargo policy, and contains the clause, "but no damage to be paid unless amounting to 5%." The cargo was in value over $17,000. The particular insurance here in question was for $5,000. As the insurance covered only a part of the value insured, "the insured stands as his own insurer as to the remainder. The insurers are therefore liable for only that part or proportion of the loss which the amount they have insured is of the value of the whole property insured and at risk. This is equally true whether the property or interest be valued in the policy or left open." 2 Pars. Mar. Ins. p. 405. The clause, "but no damage to be paid unless amounting to 5%," exempts the insurer from payment of any loss unless that loss should equal 5 per cent. of the value of the cargo. The liability of the insurer under this policy, then, was a liability, in case of partial loss exceeding 5 per cent. of the value of the entire cargo, to pay such proportion of the loss as the amount in the policy bore to the value of the entire cargo. The clause in the rider which is supposed to work a change in the contract as expressed in the policy itself is this: "Warranted free from particular average under 5%, each kind of goods and each bill of lading interest subject to separate average." We agree with counsel for the libelant that, if the expression be ambiguous, it is to be given an interpretation most favorable to the assured; but is it ambiguous, and what is its purpose? The libelant was a common carrier of merchandise, receiving property for carriage from different owners, shipping under different bills of lading and to different consignees. It was sought to protect each bill of lading interest in the same manner that an entire cargo would be protected under a policy of marine insurance when shipped by one owner. The libelant knew that a policy of marine insurance had a radically different construction from that of a policy of fire insurance. We can read here no thought or intention to conform the one to the other. The manifest purpose was this: Under

the general form of policy there could be no loss covered by the insurance unless it equalled 5 per cent. of the entire cargo. It was sought so to change that provision that it should be applicable to each kind of goods and each bill of lading interest. For example, no loss upon the corn should be paid unless it equaled 5 per cent. of its value, no loss upon the flour unless it equaled 5 per cent. of its value, and so on. To ascertain what was to be deemed a loss under the policy, each kind of goods and each bill of lading interest was made subject to separate average. The 5 per cent. was to be computed upon the value of each kind of goods and each bill of lading interest, and not upon the value of the entire cargo. The term "average" is here used in the sense of the per centum of damage necessary to constitute loss under the policy; that is to say, not insured against damage or partial loss unless equal to 5 per cent. of the value of the particular kind of goods or particular bill of lading interest. This appears to us to be the clear purpose and the plain reading of the language employed. Thus, in Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U. S. 1, 8, 21 Sup. Ct. 1, 3, 45 L. Ed. 49, by the memorandum the goods were expressly warranted by the assured "free from average unless general," and by the rider "free from particular average, but liable for absolute total loss of a part if amounting to five per cent." The court, speaking by the chief justice, remarked:

"The memorandum and marginal clauses were in pari materia, and to be read together. They were not contradictory, and the rider merely operated to qualify the memorandum by allowing recovery for an actual total loss in part, which could not otherwise be had. In other words, the qualification was manifestly inserted so that, while conceding that under the memorandum clause no liability was undertaken for a constructive total loss, but only a liability for an actual total loss, the insurers might be held for an actual total loss of a part."

The rider in that respect qualified the provision of the policy that, in order to constitute a claim under it, the partial loss must equal 5 per cent. of the entire cargo. This policy covered the entire cargo. It insured "all grain, flour, general merchandise, etc., shipped on board the propeller City of Duluth." When, therefore, a loss has occurred on any particular species exceeding 5 per cent. of the value of the species, that is a loss under the policy to be borne according to the terms of the policy. That is to say, a loss being ascertained, the amount to be paid by the insurer is determined in the same manner as in the case of a loss exceeding 5 per cent. upon the entire cargo. Liability under the policy is not enlarged by the rider, except with respect to what shall be deemed a partial loss. The measure of liability for a loss ascertained is that which attaches by law to the policy stated in the rule laid down by Mr. Parsons and other text writers upon the law of marine insurance. That measure of liability is the proportion of the ascertained loss which the amount insured is of the value of the whole property insured and at risk. We perceive nothing in the language of the rider to change the proper construction of the language of the policy. There is nothing to indicate design to change the rule that, if the insurance covers only a part of the value of the property insured, the insured stands as his own insurer as to

the remainder. The insurance, then, was not of $5,000 on each species, but was to the extent of $5,000 upon a cargo valued at upwards of $17,000. The theory of the libelant that, in case of partial loss of all the species equal to the sum of the insurance, the insurer was liable for the full amount of the sum stated in the policy, and that sum should be distributed pro rata among the several species, ignores, without warrant and without contract provision to that end, the fundamental principle of marine insurance, that as to the uninsured value the owner is his own insurer. The case stands, therefore, as though there were $17,000 of insurance upon $17,000 of value, and each insurer—the companies, and the owner of the insured value, as an insurer of that value—must bear that proportion of the loss which the sum insured by each bears to the total value. The cases of Insurance Co. v. Bland, 9 Dana, 143, and of Silloway v. Insurance Co., 12 Gray, 73, as we read them, in no way impugn our conclusion; the question here involved not arising and being not considered in either of those cases. In the former there was a provision that particularly enumerated articles were warranted free of average unless general, and others free of average under certain specified percentages; and it was held that, to ascertain whether a loss occurred within the policy, the amount of damage is to be compared, not with the total value of the goods insured, nor with the value of the various articles to which the same warranty or rate of average applies, taken together, but with the value of that one of the several articles specified in the warranty to which the damage has occurred. This is in conformity with what we here hold as to the meaning of the rider. In the latter case, under the provision in the memorandum clause of the policy that there should not be liability for partial loss on specified articles unless it amount to 7 per cent. on the whole aggregate value of such articles, and happen by stranding, it was held that the underwriters were liable as for a total loss on any one kind of those articles, which, in consequence of perils insured against, was of no value at the time of arrival at the port of destination, and was thrown away, although other kinds were only partially injured before arrival. The policy insured a certain sum on one-half of the vessel, a certain other sum on one-half of the cargo, and a certain other sum on one-half of the freight. The subjects of the insurance, excepting the vessel, were not valued. The question arose upon the construction of the memorandum clause referred to. Under the Massachusetts practice the trial judge reported a stated case to the supreme court. It was held that the plaintiffs were entitled to recover as for a total loss of the articles which did not arrive in specie at the port of destination, but the question of the extent of liability for the loss thus ascertained did not arise, and was not considered; and, the court ordered that unless the parties could agree on the sum which would be due under the policies upon the principle stated, the case should be sent to an assessor to determine the amount. Neither of these cases reaches the question in hand. We consider that the insurance company is liable for that proportion of the loss which the sum insured bears to the value of the subject insured, and that the ruling of the district court was erroneous. The motion to dismiss is overruled. The cause is

remanded, with directions to the court below to enter a decree for the libelant for such sum as may be proved to be due upon the principles here determined.