## THE NYACK.

### CROSBY TRANSP. CO. v. SAUTTER.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

No. 1,848.

1. ADMIRALTY (§ 118*)—APPEAL—REVIEW.

Act Feb. 16, 1875, c. 77, 18 Stat. 315 (U. S. Comp. St. 1901, p. 525), which provided that Circuit Courts in admiralty cases on their instance side might impanel a jury, whose verdict, unless set aside, should be conclusive on the issues of fact submitted, on review by the Supreme Court. has no application to appeals from the District Court to the Circuit Court of Appeals in admiralty, in which the decree is reviewable both as to the law and facts; and where in such cases the District Court has directed a jury trial under Rev. St. § 566 (U. S. Comp. St. 1901, p. 461), their verdict is not conclusive on the appellate court, although as a general rule it will not be reversed when the evidence is conflicting.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 758–775, 794; Dec. Dig. § 118.*]

2. SEAMEN (§ 29*)—INJURY IN SERVICE—LIABILITY OF VESSEL.

Libelant, who was chef on a lake steamer, was injured by slipping and falling in a passageway, the floor of which was wet because of leakage from pipes and water spilled by seamen when washing their clothes on the deck, as they were permitted to do. The vessel had recently been inspected and given a certificate of seaworthiness by a federal inspector, and there was no rule nor custom which required her to furnish equipment for washing clothes other than that used in this case. So far as shown by the evidence, the leakage from pipes may have been due to the negligent failure to close faucets, and not to any defect in the pipes. Held, on the evidence, that the injury was caused by the negligence of members of the crew, who were libelant's fellow servants; and it ap-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pearing that the vessel was in no way unseaworthy, or lacking or defective in equipment, she was liable in rem only to the extent of furnishing to libelant maintenance and proper treatment for his injury, and for his wages to the end of the voyage.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit in admiralty by William F. Sautter against the steamer Nyack; Crosby Transportation Company, claimant. Decree for libelant, and claimant appeals. Reversed.

Libel in rem against the passenger steamer Nyack, filed November 29, 1909. Hearing before the District Court and a jury, December 15, 1910. Verdict and decree for appellee for $1,041.45, damages and costs. Appellant claimed as owner of the steamer. At the time of the accident, June 4, 1909, the libelant was chef on the steamer Nyack, a passenger vessel engaged in interstate commerce on Lake Michigan, properly enrolled and licensed. The steamer was owned by the Crosby Transportation Company, claimant and appellant herein. About 1 o'clock p. m. of that day, a fire drill was held, and in such drill the utmost haste is required of every member of the crew. At the first sound of the fire signal, the libelant started on a run from his kitchen to his post at the first gangway. In the passageway leading from the kitchen to the first gangway, libelant slipped and fell, while engaged in his duty in answer to the fire call, by reason of the wet and slippery condition of the floor. In falling, he slid and struck his left knee upon an ash bucket, breaking the kneecap, which injury is permanent. The injury has, and will continue to greatly reduce libelant's earning capacity. Libelant charges that the wet and slippery condition of the passageway was due to the defective and insufficient appliances in the forecastle, in consequence of which enough water was allowed to flow from the forecastle to the scupper hole of the first gangway to keep the floor constantly wet and slippery. This wet and slippery condition of the floor was the proximate cause of the accident. The libel, as amended, covers all the facts and issues in the case, and charges that the steamer Nyack was insufficient and unseaworthy, and that the accident resulted from this insufficiency and unseaworthiness. The theory of the case was given to the jury' by the charge, substantially as follows:

"This is an action in admiralty, instituted by a libel against the boat and against the owners of the boat. The owner of this boat is a corporation known as the Crosby Transportation Company. The theory upon which the libel is based is that the libelant, while in the exercise of ordinary care and in the discharge of his duty as an employé, was injured by a fall in the narrow passageway of the steamer Nyack, on the port side of the boat, which fall was caused by the wet and slippery condition of the floor of the passageway; that that condition was brought about by water, some of it soapy, and some of it dirty, and some of it the leakage of the pipes that came from the place which had been assigned by the respondent company to the deck hands where they might wash their clothes, on the main deck, just forward of the cook's galley. The theory upon which this libel is based is that the master is bound to exercise reasonable care to provide a safe place for his employé to work in; and the theory is that, by instituting the appliances and granting the privilege to the deck hands to wash their clothes with the facilities there furnished, the respondent was not able to furnish, and did not furnish, the reasonably safe place for this plaintiff, as an employé of the boat, to discharge his functions and to obey the orders of the officers of the boat. You have seen this boat, and therefore no description of mine could make it any more plain or vivid than your own recollection of what you saw.

"Now, gentlemen, when you are called upon to pronounce upon a question of negligence, as you are here, it being contended that the act of the respondent in furnishing these appliances was negligent, the court instructs you that

the test and standard of what in law amounts to negligence is the conduct of a man of ordinary care and prudence. You are asked to find that the respondent company was guilty of negligence. You square the conduct of this company with the conduct of a man of ordinary care and prudence, and you inquire whether under the identical circumstances a man of ordinary care and prudence would have done as the respondent corporation did in regard to this matter of appliances for washing clothes on the main deck. You have been instructed by the evidence that there is nothing in the inspection laws of the government that requires the respondent to furnish this place to the deck hands to wash their clothes. That is outside of the governmental inspection. But the court charges you that that circumstance did not prevent the respondent, if it chose to do so, from furnishing these appliances for the deck hands. The inspector says the steamboat 'is not a laundry.' That is true. But if the defending company in its own wisdom saw fit to furnish facilities to the deck hands to wash their clothes on the main deck, that is a right they have, and the law is that, if they undertake to furnish such appliances, they must do so in such a manner as a man of ordinary care and prudence would do under the same circumstances.

"The contention of the libelant here is that the appliances which were furnished by the defendant company for the deck hands for the purpose of washing were crude and imperfect and inadequate. They consisted, as you know, of a barrel into which water ran through a hose, and another pipe conducting steam for the purpose of warming the water, and then the deck hands would take buckets or tubs, or whatever they could get, butter tubs or anything else, and dip into this barrel and get the water out, throw their clothes in, and wash them right there. Now you saw that boat. You noticed that there was an incline from the bow going aft, quite a sharp incline. You noticed the two passageways, one on the port and the other on the starboard side. The evidence is—but it would require little evidence where you have seen the situation—that this water that was spilled by the deck hands in the process of washing, and the water that leaked from the various pipes, the pump and the cold water pipe and the steam pipe, that whatever water was thrown upon the floor of the main deck in front of the cook's galley, would necessarily run down one or the other of these passageways; and it is contended that there was a crown in those passageways which was sufficient, if the boat was on an even keel, to keep the water on one side of the passageway until it could escape through the scupper hole. The contention of the libelant is that this was a clumsy and inadequate appliance to allow that water to escape and run down that distance along the boat, almost to the main gangway where the scupper hole was; that there ought to have been some nearer escape for this water, nearer to the tubs, so that it would not run down there and keep the deck wet and slippery. That will be for you to decide."

Libelant demanded a jury trial, alleging that through inadvertence at the time of pleading he neglected to demand a jury trial, that the claimant has controverted several issues of fact alleged in the libel, properly triable by jury. Claimant objected to a jury trial, save as advisory to the court, for the reason that the jurisdiction of the court, as a court of admiralty, was exclusive.

M. C. Krause, of Milwaukee, Wis., for appellant.

W. B. Rubin and A. W. Foster, both of Milwaukee, Wis., for appellee.

Before KOHLSAAT and MACK, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). [1] 1. It is urged by counsel for libelant that this court is bound by the act of 1875, quoted below, and cannot examine the evidence for itself; at the very least, that it must appear that the verdict is against the

decided preponderance of the evidence. It is therefore necessary to examine the statute, and decisions thereon, to ascertain the properly applicable rule of procedure on this appeal.

The first provision in respect to trial by jury in admiralty cases is found in the act of February 26, 1845, part of which was retained in Revised Statutes, § 566. This act originally purported to give the district courts jurisdiction—

"in matters of contract and tort, arising in, upon· or concerning steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed in the coasting trade and employed in the business of commerce and navigation between ports and places in divers states and territories, *upon the lakes and navigable waters connecting the same,* as is now possessed by the said courts in cases of like steamboats and other vessels employed in navigation and commerce upon the high seas."

At the time this statute was adopted the admiralty jurisdiction was held to extend only to tide waters, so that it could not have been sustained if the admiralty jurisdiction had not been enlarged to apply to all waters navigable in fact, since the constitutional grant of admiralty jurisdiction could not have been extended by Congress. The Genesee Chief, 12 How. 443, 13 L. Ed. 1058; The Eagle, 8 Wall. 15, 19 L. Ed. 365. By the latter case the portion of the act of 1845 above quoted was held to have become inoperative as a grant of jurisdiction, because that jurisdiction was granted by the Constitution, and because the constitutional grant would otherwise be narrowed by that statute; but, that the portion of the statute providing for a jury trial on request of either party was still in force. This part of the statute was preserved in section 566 of the Revised Statutes, and reads as follows, in its original form as adopted in 1845:

"Saving, however, to the parties the right of trial by jury of all facts put in issue in such suits, where either party shall require it."

The only other provision for jury trial in admiralty ever adopted by Congress is Act Feb. 16, 1875, 18 Stat. 315, 4 Fed. Stat. Ann. 557, which reads:

"That the Circuit Courts of the United States, in deciding causes of admiralty and maritime jurisdiction on the instance side of the court, shall find the facts and the conclusions of law upon which it renders its judgments or decrees, and shall state the facts and conclusions of law separately. And in finding the facts, as before provided, said court may, upon the consent of the parties who shall have appeared and put any matter of fact in issue, and subject to such general rules in the premises as shall be made and provided from time to time, impanel a jury of not less than five and not more than twelve persons, to whom shall be submitted the issues of fact in such cause, under the direction of the court, as in cases at common law. And the finding of such jury, unless set aside for lawful cause, shall be entered of record, and stand as the finding of the court, upon which judgment shall be entered according to law. The review of the judgments and decrees entered upon such findings by the Supreme Court, upon appeal, shall be limited to a determination of the questions of law arising upon the record, and to such rulings of the Circuit Court, excepted to at the time, as may be presented by a bill of exceptions, prepared as in actions at law."

With practically substantial unanimity it has been held by the Circuit Courts of Appeals that the last-mentioned statute has no

application to those courts. This provision was intended to relieve the Supreme Court of the labor of looking into the facts found by the Circuit Court on appeals to that court from the District Court in admiralty cases. All jurisdiction of the Circuit Court in admiralty having been taken away by the Evarts Act in 1891 (Act March 3, 1891, c. 517, 26 Stat. 826 (U. S. Comp. St. 1901, p. 547), creating the Circuit Court of Appeals, the act of 1875, relating wholly to the Circuit Court, was impliedly repealed. No Circuit Judge could thereafter make findings or do any other act in an admiralty case. Munson S. S. Line v. Miramar S. S. Co., 167 Fed. 960, 93 C. C. A. 360.

In connection with rulings of this kind it has also been quite generally decided that there is a trial de novo in the Circuit Court of Appeals, where there may be new pleadings and new evidence. This was provided for by admiralty rule 49 (29 Sup. Ct. xliv), adopted pursuant to the act of August 23, 1842, by which it was enacted that:

"The mode of proof in causes of equity and of admiralty jurisdiction shall be according to rules now or hereafter prescribed by the Supreme Court, except as herein specially provided." Section 862, R. S. (U. S. Comp. St. 1901, p. 661).

A departure from this rule by the Circuit Court of Appeals of the Second Circuit led to the protest from many leading admiralty lawyers, shown in Re Hawkins, 147 U. S. 486, 13 Sup. Ct. 512, 37 L. Ed. 251. It is evident that a trial de novo, or a new hearing in the appellate court, necessarily excludes any and all binding effect of the verdict of a jury or finding of the District Court.

In the First circuit the act of 1875 was held inapplicable to the Circuit Court of Appeals in The Philadelphian, 60 Fed. 423, 9 C. C. A. 54, also deciding that there might be new evidence in the appellate court. See, also, The Alijandro, 56 Fed. 621, 6 C. C. A. 54. Like decisions in the Second circuit are The Havilah, 48 Fed. 684, 1 C. C. A. 77, and The E. A. Packer, 58 Fed. 251, 7 C. C. A. 216, both holding the act of 1875 inapplicable to the Circuit Court of Appeals. In The Western States, 159 Fed. 354, 86 C. C. A. 354 (certiorari denied 210 U. S. 433, 52 L. Ed. 1136, 28 Sup. Ct. 762), the question is fully examined by Judge Ward, both with reference to the act of 1845 and of 1875. The opinion is expressed that the Supreme Court, in cases decided shortly after the adoption of the act of 1845, substantially held that verdicts under the act of 1845 are conclusive. However, the action of the District Judge in cutting down the verdict one-half was affirmed. And in Munson Steamship Line Case, cited above, the Circuit Court of Appeals of the Second Circuit held that the latter act of 1875 was repealed by the Evarts Act.

In the Third circuit the question has not been decided. In the Fourth the rule above expressed is adopted by the District Court in The City of Toledo, 73 Fed. 220, and by the Circuit Court of Appeals in the The Brandywine, 87 Fed. 652, 31 C. C. A. 187, The Anaces, 106 Fed. 742, 45 C. C. A. 596, and Baker-Whiteley Coal Co.

v. Neptune Nav. Co., 120 Fed. 247, 56 C. C. A. 83. In The Glide, 72 Fed. 200, 18 C. C. A. 504, leave to take evidence pending appeal had been previously granted by the Court of Appeals. 68 Fed. 719, 15 C. C. A. 627. The District Judge declined to certify the new evidence to the Court of Appeals. The latter court refused to hear the case de novo, but remanded with instructions to grant a new trial. The rule in the Fifth circuit is not so clearly established, although the cases of The Edward H. Blake, 92 Fed. 202, 34 C. C. A. 397, and The Trefusis, 98 Fed. 314, 39 C. C. A. 96, seem to apply substantially the same theory. The latter case adopts a stricter rule than that of other circuits, with a narrower review.

An exceedingly clear statement of the rule is found in the opinion of Judge Lurton, then of the Sixth circuit, in a case before Judges Taft, Lurton, and Clark. City of Cleveland v. Chisholm, 90 Fed. 431, 33 C. C. A. 157, sustaining the right of retrial in the Court of Appeals, and holding that the act of 1875 has no application to that court. Judge Lurton says:

"Notwithstanding this right of retrial here, the rule prevails that the judgment of the District Court will not be reversed when the result depends alone upon questions of fact depending upon conflicting evidence, unless there is a decided preponderance against the judgment, where the trial judge saw and heard the witnesses, and had an opportunity of weighing their intelligence and candor. This was the rule applied in the Circuit Courts when the appeal was from the District to the Circuit Courts."

A similar rule was applied in The Edward Smith, 135 Fed. 32, 67 C. C. A. 506.

Our own circuit, the Seventh, has adopted the principle in question, in several well-considered cases. In the first of these, decided in 1894, Judge Seaman says:

"In an appeal in admiralty from a District Court, this court is not reviewing 'a question of discretion, but is hearing an appeal which is a new trial,' and must deal with the questions involved 'as though they were original questions'"—citing several of the above decisions. Clark v. Five Hundred and Five Thousand Feet of Lumber, 65 Fed. 236, 242, 12 C. C. A. 628.

The same question arose in Gilchrist v. Chicago Ins. Co., 104 Fed. 566, 44 C. C. A. 43, before Justice Harlan and Judge Woods. In delivering the decision of the court Justice Harlan said:

"An admiralty appeal by the libelant in the Circuit Court of Appeals, under the act of 1891, is to be heard and determined under substantially the same rules and limitations that regulated the determination of admiralty appeals in the circuit courts prior to the passage of that act. It results that this court may properly consider and determine every issue raised by the pleadings, and, without regard to the decree below, direct such a decree to be entered here as is consistent with law. If, in our judgment, the libelants are not entitled to a decree in any amount—and such is the contention of the underwriters—we may dismiss the libel, notwithstanding the underwriters did not themselves directly appeal from the decree."

The case was followed in Chicago Ins. Co. v. Graham & Morton Trans. Co., 108 Fed. 271, 47 C. C. A. 320, opinion by Judge Jenkins.

One case only has arisen in the Circuit Court of Appeals of the Eighth Circuit, that of Pioneer Fuel Co. v. McBrier, 84 Fed. 495,

28 C. C. A. 466, opinion by the late Justice Brewer. Whether the act of 1875 applies to the Court of Appeals is doubted, but it is held that the case goes to that court for review, rather than for trial. In the Ninth circuit many cases have come up, all of them squarely supporting the principle generally adopted in the most of the other circuits. The State of California, 49 Fed. 172, 1 C. C. A. 224; The Coquitlam, 77 Fed. 744, 23 C. C. A. 438; Nelson v. White, 83 Fed. 215, 32 C. C. A. 166; Jacobsen v. Lewis Klondike Expedition Co., 112 Fed. 73, 50 C. C. A. 121; Pàauhau Sugar Plantation Co. v. Palapala, 127 Fed. 920, 62 C. C. A. 552; Stimson Mill Co. v. Moran Co., 175 Fed. 38, 99 C. C. A. 54; Reed v. Weule, 170 Fed. 660, 100 C. C. A. 212.

Following the settled rule of this circuit, therefore, the questions of fact and law involved in an admiralty appeal come to us substantially as they do to the District Judge. He may order a jury trial in cases on the Great Lakes and connecting waters, under the act of 1845, when either party so requests, provided the vessel be engaged in interstate commerce. Whether the verdict shall be treated by the District Court as advisory only, or as binding, may be doubtful; but, however this may be, it is entirely settled that the Circuit Court of Appeals may review the whole case as if it were originally brought there, except that it will not reverse where the evidence is conflicting, as a general rule. From the decisions of the Supreme Court in The Genesee Chief, 12 How. 443, 13 L. Ed. 1058, and The Eagle, 8 Wall. 15, 19 L. Ed. 365, it would appear that the verdict of a jury is binding on the trial court, unless set aside under some rule applying generally to jury trials. This view is taken by the Circuit Court of Appeals of the Second Circuit in The Western States, supra. At all events the district court had power to adopt the verdict, as it did by its decree, although it is not binding on appeal, except in the limited sense referred to.

[2] 2. We are thus brought to consider the case on its merits. The responsibility of a ship, or its owner in a suit in rem like this, for injuries to a seaman, or other person employed on the boat, is quite different from the common-law liability of the master for the act of a servant. The following rules are in force governing the liability in rem: (1) The ship is liable, as well as its owner, for the maintenance and cure of a seaman wounded, or taken sick; also for his wages as long as the voyage, if any, continues. (2) Both ship and owner are liable for indemnity for injuries received by a seaman in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. (3) All the members of the crew are, as between themselves, fellow servants; and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of maintenance and cure. (4) Seamen cannot recover for the negligence of the master, or of any member of the crew, but are entitled to maintenance and cure, whether the injury was received by negligence or accident. These rules are laid down in The Osceola, 189 U. S. 158, 175, 23 Sup. Ct.

483, 47 L. Ed. 760, and have ever since been followed and applied by the federal courts. It has further been held that the libelant must establish his case with reasonable certainty. Johnson v. Frederick Leyland & Co., 153 Fed. 572, 82 C. C. A. 526. If the evidence leaves the case in uncertainty a decree for libelant is not justified. Id. If an appurtenance is not properly used the ship is not liable. The Drumelton (D. C.) 158 Fed. 454. The master is not a fellow servant of the crew. Fallon v. Cornell Steamboat Co. (C. C.) 162 Fed. 329, a case of collision, where the vessel was held liable. Nor is the master a fellow servant with the cook, the stewardess, or other inferior members of the crew. The Hamilton, 146 Fed. 724, 77 C. C. A. 150, affirmed 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264; Trauffler v. Detroit & Cleveland Nav. Co. (D. C.) 181 Fed. 256. The ship is not liable for an injury caused by the negligence of the mate, beyond maintenance and cure. The Charles H. Klinck (D. C.) 172 Fed. 1019. Ship and owner are liable for the negligence of the master in not giving a sick seaman proper medical treatment and cure. The M. E. Luckenbach (D. C.) 174 Fed. 265, affirmed 178 Fed. 1004, 101 C. C. A. 663; The Fullerton, 167 Fed. 1, 11, 92 C. C. A. 463. It follows from the Osceola Case that a reasonably safe working place is furnished when the ship is seaworthy and suitable appliances are furnished and kept in order. The P. P. Miller (D. C.) 180 Fed. 288.

Libelant was hurt on a warm day in June, about 1 o'clock in the afternoon, some four hours after the deck had been scrubbed, and when it would have dried off from the scrubbing. Running to answer the fire call, he slipped and fell in the passageway near the front end of the boat, striking his knee against an ashpan negligently left there by some one and breaking his kneecap. The cause of his injury was found by the jury to have been slipperiness of the passageway, partly by reason of soapy, dirty water from certain tubs used by the seamen in washing clothing, and partly from leaky water pipes, and a sink under these pipes being allowed to run over when used by the deck hands. They also found there was no negligence on the part of libelant, and that the vessel was not provided with proper or sufficient appliances for the use of the hands for washing. In other words, the jury decided that the shipowner put in or allowed the use of a barrel to hold water for washing purposes, and granted the privilege to the deck hands to wash their clothing in tubs, from which they allowed soapy and dirty water to escape, thus making the working place unsafe and dangerous.

One of the elements of liability found by the jury was that part of the water making the slippery deck came from leaky pipes. However, the evidence is not only unsatisfactory on this point, but also fails to disclose that the water came from defects in the pipes. The testimony is entirely consistent with the inference that the faucets might have been left open by the deck hands. No defect in any pipe was described. One witness only testified that water was running or leaking from the pipes, though his statement is

not entirely satisfactory; but he seemed to regard the main cause of the injury the slopping over of soapy water from the tubs used by the seamen. Libelant says he did not particularly examine the pipes before his accident. Other witnesses testify that the water pipe was disconnected long before the injury, and that the steam pipe was in good condition. Moreover, as already stated, the evidence does not disclose why the water ran from the water pipe or the steam pipe. If this is the fact, it might as well have been from the careless leaving open of the faucets, as from any other cause.

The steamer was inspected April 22, 1909, and found to be in seaworthy condition, except a section of hose replaced and a section of pipe tightened. It was equipped according to the federal inspection laws. Mr. Van Patton, United States steamboat inspector, testified he never heard of a vessel being required to have any equipment for washing clothes. There is no such requirement, nothing in the law on the subject. It would, however, be a simple matter to have a stationary appliance for washing clothes, with a drain pipe, much superior to the use of tubs, and safer.

What is there, then, in the foregoing summary of the testimony, to show that the water pipe, or the steam pipe, were not in perfect condition, and that the constantly running water was not caused by their being left open by those using them? There was no apparent effort made by counsel for libelant on the trial to distinguish between the negligent use of appliances and defects in such appliances. It seems clear, also, that it was the negligent use of the washing tubs by the deck hands which caused the injury. The theory that washing tubs or other appliances for washing clothing are a necessary part of the equipment of a lake steamer seems a novelty. Mr. Van Patton, steamboat inspector of the Milwaukee district for 6 years, master for 22 years, testified that he never found any appliances other than those on the Nyack for washing purposes, never noticed any on the Goodrich or other boats. Certainly the seamen could have made a proper use of these tubs, instead of letting them boil over and slop over as they did.

An injured seaman is entitled to his wages and maintenance, and to a cure, if reasonably possible. The ship is liable for the master's neglect to give him proper care or medical treatment; but further than this the liability in rem does not go. From the whole evidence it is reasonably clear that the libelant was injured through the negligence of the crew, and that he should recover only for wages, maintenance, and proper care. He has had all these, except wages, which respondent alleges in its answer were offered him for a month, or $70.

The decree appealed from is reversed, with costs, with direction to enter a decree for libelant for $70, with costs against libelant.

Reversed.